

**HAYWARD**
P L L C

10501 N. CENTRAL EXPRESSWAY
SUITE 106   DALLAS, TX 75231
972.755.7100 (MAIN/FAX)
WWW.HAYWARDFIRM.COM

*ZACHERY Z. ANNABLE*
972.755.7108 (DIRECT)
ZANNABLE@HAYWARDFIRM.COM

April 19, 2023

Lyle W. Cayce
Clerk of the Court
United States Court of Appeals
for the Fifth Circuit
F. Edward Hebert Building
600 S. Maestri Place
New Orleans, LA 70130

Re: *NexPoint Advisors, L.P. v. Pachulski Stang Ziehl & Jones, LLP, et al.,* **Case No. 22-10575**
<u>**Notice of Supplemental Authority**</u>

Dear Sir:

Under Federal Rule of Appellate Procedure 28(j), and as counsel to the Appellees in the appeal referenced above, we write to inform the Court of a new development directly bearing on the sole issue on appeal, scheduled for oral argument on May 1, 2023, at 9:00 a.m.

One of Appellant's principal arguments in its briefing is that it has standing because it is a defendant in an adversary proceeding currently pending before the Bankruptcy Court styled *Kirschner, as Litigation Trustee of the Litigation Sub-Trust v. Dondero et al.* (the "**Adversary Proceeding**"). Appellant argues that the Adversary Proceeding seeks recovery from Appellant for the very fees and expense reimbursements at issue in this appeal, thereby making it a person aggrieved with standing to prosecute the appeal.

Since briefing closed in this appeal, the Adversary Proceeding noted above has been stayed. See *Order Granting the Litigation Trustee's Motion to Stay the Adversary Proceeding*, Case No. 21-03076-sgj, Bankr. N.D. Tex. Apr. 4, 2023, attached hereto as **<u>Exhibit A</u>**. The Litigation Trustee (plaintiff) sought a stay of that matter because "pursuit of this litigation may prove unnecessary, in which case the Court would be spared the burden of further adjudicating this Action." See *The Litigation Trustee's Motion to Stay the Adversary Proceeding,* Case No. 21-03076-sgj, Bankr. N.D. Tex. March 24, 2023, attached hereto as **<u>Exhibit B</u>** (without exhibits).

The stay of the Adversary Proceeding, and the possibility that it may never be prosecuted, reinforces the conclusion that the Adversary Proceeding does not make Appellant a person aggrieved with standing to prosecute the appeal.





Sincerely,

Zachery Z. Annable

Attachments

cc:    Kristin H. Jain
       Samuel A. Schwartz

# **<u>EXHIBIT A</u>**



**CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON
THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed April 4, 2023**

**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.,[1]<br><br>    Reorganized Debtor. | Chapter 11<br><br>Case No. 19-34054-sgj11 |
| MARC S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST,<br><br>    Plaintiff,<br><br>        v.<br><br>JAMES D. DONDERO; MARK A. OKADA; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY | Adv. Pro. No. 21-03076-sgj |

---

[1] The last four digits of the Reorganized Debtor's taxpayer identification number are (8357). The Reorganized Debtor is a Delaware limited partnership. The Reorganized Debtor's headquarters and service address are 100 Crescent Court, Suite 1850, Dallas, TX 75201.

1



¶1934054230404000000000006

INVESTMENT TRUST; GET GOOD TRUST
AND GRANT JAMES SCOTT III, AS
TRUSTEE OF GET GOOD TRUST; HUNTER
MOUNTAIN INVESTMENT TRUST; MARK &
PAMELA OKADA FAMILY TRUST –
EXEMPT TRUST #1 AND LAWRENCE
TONOMURA AS TRUSTEE OF MARK &
PAMELA OKADA FAMILY TRUST –
EXEMPT TRUST #1; MARK & PAMELA
OKADA FAMILY TRUST – EXEMPT TRUST
#2 AND LAWRENCE TONOMURA IN HIS
CAPACITY AS TRUSTEE OF MARK &
PAMELA OKADA FAMILY TRUST –
EXEMPT TRUST #2; CLO HOLDCO, LTD.;
CHARITABLE DAF HOLDCO, LTD.;
CHARITABLE DAF FUND, LP.; HIGHLAND
DALLAS FOUNDATION; RAND PE FUND I,
LP, SERIES 1; MASSAND CAPITAL, LLC;
MASSAND CAPITAL, INC.; AND SAS ASSET
RECOVERY, LTD.,

        Defendants.

## ORDER GRANTING THE LITIGATION TRUSTEE'S
## MOTION TO STAY THE ADVERSARY PROCEEDING

Having considered the *Motion to Stay the Adversary Proceeding* (the "Motion")[2] filed by

Marc S. Kirschner (the "Litigation Trustee"), the Litigation Trustee of the Litigation Sub-Trust

established pursuant to the *Fifth Amended Plan of Reorganization of Highland Capital

Management, L.P. (as Modified)* [Bankr. Dkt. 1808][3] (as amended, the "Plan") and plaintiff in the

above-captioned adversary proceeding (the "Adversary Proceeding"), the Court finds and

concludes (i) it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; (b) notice

of the Motion was sufficient under the circumstances; and (c) good cause exists to grant the relief

requested in the Motion.  Accordingly, **IT IS THEREFORE ORDERED THAT**:

      1.     The Motion is **GRANTED** as set forth herein.

---

[2] Capitalized terms not otherwise defined in this Order shall have the meanings given them in the Motion.

[3] "Bankr. Dkt." refers to the docket maintained in Case No. 19-34054-sgj11 (Bankr. N.D. Tex.).

2.      All proceedings in the Adversary Proceeding, including the *Motion to Recuse Pursuant to* 18 U.S.C. §§ 144 *and* 455 [**Dkt. No. 309**], are hereby **STAYED** through and including September 30, 2023, which stay will continue thereafter until any party to the Adversary Proceeding provides 30 days' written notice to all other parties and the Court of their intent to resume the Adversary Proceeding.

3.      Unless otherwise agreed by the Parties, the schedule set forth in the revised Scheduling Order filed with the Court on March 24, 2023, shall apply if the stay expires and the litigation has not been resolved, with the time periods extended commensurate with the period of the stay.

4.      The *Motion to Stay and Response to Plaintiff's Motion to Stay* filed by Defendants James D. Dondero, Strand Advisors, Inc., Dugaboy Investment Trust, and Get Good Trust [**Dkt. No. 329**] is deemed WITHDRAWN based on counsel's representations to the Court.

5.      All other objections and responses to the Motion including the *Response to the Litigation Trustee's Motion to Stay the Adversary Proceeding* filed by Defendants CLO Holdco, Ltd.; Charitable DAF Holdco, Ltd.; Charitable DAF Fund, LP; and Highland Dallas Foundation, Inc. [**Dkt. No. 332**]; and the *Joinder of Defendants NexPoint Advisors, L.P. and Highland Capital Management Fund Advisors, L.P. to Defendants James D. Dondero, Dugaboy Investment Trust, Get Good Trust, and Strand Advisors, Inc.'s Cross-Motion to Stay and Response to Plaintiff's Motion to Stay* [**Dkt. No. 331**], are also deemed WITHDRAWN based on counsel's representations to the Court.

6.      Nothing in this Order shall be construed as a stay of the adjudication of the objections to this Court's *Report and Recommendation to the District Court Proposing that it: (A) Grant Defendants' Motions to Withdraw the Reference at Such Time as the Bankruptcy Court*

*Certifies that Action is Trial Ready; But (B) Defer Pre-Trial Matters to the Bankruptcy Court*, which are pending in the United States District Court of the Northern District of Texas in Case No. 22-cv-203-S.

7.      The Defendant Parties will use good faith efforts to obtain agreements from subpoenaed third parties that objections to and compliance with those subpoenas are all tolled for the period of the stay, with documents to be preserved, and that new subpoenas will not be necessary if and when the stay is terminated.  If such agreements cannot be obtained, the subpoenaing party(ies) may elect to pursue the outstanding discovery.  The Defendant Parties shall notify Plaintiff's counsel if they are unable to reach an agreement with any such third-party.

8.      The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.

### ### END OF ORDER ###

# **EXHIBIT B**

**QUINN EMANUEL URQUHART & SULLIVAN LLP**
Deborah J. Newman (admitted *pro hac vice*)
Robert S. Loigman (admitted *pro hac vice*)
Calli Ray (admitted *pro hac vice*)
Anna Deknatel (admitted *pro hac vice*)
Aaron M. Lawrence (admitted *pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone:  (212) 849-7000

**SIDLEY AUSTIN LLP**
Paige Holden Montgomery
Juliana L. Hoffman
2021 McKinney Avenue
Suite 2000
Dallas, Texas 75201
Telephone: (214) 981-3300

*Counsel for Marc S. Kirschner, as Litigation
Trustee of the Highland Litigation Sub-Trust*

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.,[1]<br><br>Reorganized Debtor. | Chapter 11<br><br>Case No. 19-34054-sgj11 |
| MARC S. KIRSCHNER, AS LITIGATION TRUSTEE OF THE LITIGATION SUB-TRUST,<br><br>Plaintiff,<br><br>v.<br><br>JAMES D. DONDERO; MARK A. OKADA; SCOTT ELLINGTON; ISAAC LEVENTON; GRANT JAMES SCOTT III; STRAND ADVISORS, INC.; NEXPOINT ADVISORS, L.P.; HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.; DUGABOY INVESTMENT TRUST AND NANCY DONDERO, AS TRUSTEE OF DUGABOY INVESTMENT TRUST; GET GOOD TRUST AND GRANT JAMES SCOTT III, AS TRUSTEE OF GET GOOD TRUST; HUNTER MOUNTAIN INVESTMENT TRUST; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1 AND LAWRENCE TONOMURA AS TRUSTEE OF MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST #1; MARK & PAMELA OKADA FAMILY TRUST – EXEMPT TRUST | Adv. Pro. No. 21-03076-sgj |

---

[1]  The last four digits of the Reorganized Debtor's taxpayer identification number are (8357).  The Reorganized Debtor is a Delaware limited partnership.  The Reorganized Debtor's headquarters and service address are 100 Crescent Court, Suite 1850, Dallas, TX 75201.


1934054230327000000000007

#2 AND LAWRENCE TONOMURA IN HIS
CAPACITY AS TRUSTEE OF MARK &
PAMELA OKADA FAMILY TRUST –
EXEMPT TRUST #2; CLO HOLDCO, LTD.;
CHARITABLE DAF HOLDCO, LTD.;
CHARITABLE DAF FUND, LP.; HIGHLAND
DALLAS FOUNDATION; RAND PE FUND I,
LP, SERIES 1; MASSAND CAPITAL, LLC;
MASSAND CAPITAL, INC.; AND SAS ASSET
RECOVERY, LTD.,

      Defendants.

# THE LITIGATION TRUSTEE'S
## MOTION TO STAY THE ADVERSARY PROCEEDING

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ......................................................................................................1

RELEVANT BACKGROUND ......................................................................................................3

    A.     THE DEBTOR FILES FOR BANKRUPTCY AND THE LITIGATION
          SUB-TRUST IS CREATED ...................................................................................3

    B.     THE LITIGATION SUB-TRUST COMMENCES THIS ACTION ......................4

    C.     THE DONDERO PARTIES COMPLAIN ABOUT THE COSTS OF
          THIS ACTION AND CONTEND IT IS UNNECESSARY ..................................5

ARGUMENT ..................................................................................................................................7

CONCLUSION ...............................................................................................................................9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*14th St. Props., LLC v. S. Fid. Ins. Co.*,
    No. CV 22-1593, 2023 WL 416317 (E.D. La. Jan. 26, 2023) ................................7

*Cleveland Air Serv., Inc. v. Pratt & Whitney Canada*,
    No. 4:13-CV-161-DMB-DAS, 2016 WL 4179987 (N.D. Miss. Aug. 5, 2016) ......................7

*Fishman Jackson PLLC v. Israely*,
    180 F. Supp. 3d 476 (N.D. Tex. 2016) ...............................................................7, 9

*Integrated Claims Sys., LLC v. Old Glory Ins. Co.*,
    No. 2:15-CV-00412-JRG, 2020 WL 1027771 (E.D. Tex. Mar. 3, 2020)................................7

*In re Janes*,
    No. 92-2712-BKC-3P7, 1993 WL 476493 (Bankr. M.D. Fla. Nov. 8, 1993) ..........................8

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936)...................................................................................7

*Maples v. Donzinger*,
    No. CIV.A. 13-223, 2014 WL 688965 (E.D. La. Feb. 21, 2014) ...........................7

*McKnight v. Blanchard*,
    667 F.2d 477 (5th Cir. 1982) ...................................................................9

*In re Ramu Corp.*,
    903 F.2d 312 (5th Cir. 1990) ...................................................................7

*Scarborough v. Integricert, LLC*,
    No. 6-12-CV-00396, 2014 WL 12662272 (W.D. La. Apr. 4, 2014).........................8

**Statutes**

United States Code title 11 section 105 ........................................................1, 2

Bankruptcy Code chapter 11........................................................................3

Bankruptcy Code section 105(a)...................................................................7

Bankruptcy Code sections 502 and 510 ..........................................................4

Bankruptcy Code sections 544, 548, and 550 ..................................................4

Marc S. Kirschner (the "Trustee" or "Litigation Trustee"), the Litigation Trustee of the

Litigation Sub-Trust established pursuant to the *Fifth Amended Plan of Reorganization of*

*Highland Capital Management, L.P. (as Modified)* [Bankr. Dkt. 1808][2] (as amended, the "Plan"),

through his undersigned counsel, hereby moves the court for entry of an order under section 105

of title 11 of the United States Code (the "Bankruptcy Code") to stay the above-captioned

adversary proceeding for a period of six months, i.e., through September 30, 2023.  In support of

this Motion, the Litigation Trustee respectfully states as follows:

### PRELIMINARY STATEMENT[3]

1.      The Litigation Trustee filed the above-captioned action (the "Action") on October

15, 2021.  As contemplated by the confirmed Plan, the Action is extensive, asserting claims against

a wide array of individuals and entities associated with James Dondero, the founder and longtime

dominant operator of Highland Capital Management, L.P. ("HCMLP") and scores of affiliated

entities.  All told, the Complaint asserts 36 causes of action against 23 Defendants.  The claims all

arise from pre-confirmation conduct perpetrated by Dondero and individuals and entities affiliated

with him, which resulted in hundreds of millions of dollars in damages to HCMLP.

2.      Simultaneous with the prosecution of this Action, the reorganized HCMLP has

continued to monetize its assets for the benefit of the Claimant Trust Beneficiaries—again, as

contemplated by the Plan—with proceeds to be distributed through the Highland Claimant Trust.

To date, those efforts have been successful and meaningful distributions have been made to the

Claimant Trust Beneficiaries.

---

[2] "Bankr. Dkt." refers to the docket maintained in Case No. 19-34054-sgj11 (Bankr. N.D. Tex.).

[3] All capitalized terms used but not defined in this Preliminary Statement have the meanings given to them below or in the Plan, as applicable.

3.      While it remains uncertain whether HCMLP's Plan will yield sufficient funds to enable the Claimant Trust to pay all expenses, satisfy all indemnification obligations, and pay holders of Class 8 and Class 9 claims in full, Dondero and his affiliates have argued in this and other courts that that the value of the Claimant Trust's assets exceeds the amount needed to pay Claimant Trust Beneficiaries in full such that the Action is a wasteful and unnecessary exercise. For example, in their Valuation Motions—filed ostensibly to obtain information on the value of the Claimant Trust's assets—The Dugaboy Investment Trust ("Dugaboy") and Hunter Mountain Investment Trust ("HMIT") argue that "the combination of cash and other assets held by the Claimant Trust in its own name and held in various funds, reserve accounts, and subsidiaries, if not depleted by unnecessary litigation would be sufficient to pay all Claimant Trust Beneficiaries in full, with interest, now."  Bankr. Dkt. 3662 at 6-7.  Building on their contention that the value of the Claimant Trust's assets exceeds the value of the claims, Dugaboy and HMIT assert that the Action is being prosecuted at their expense because, as the residual beneficiaries of the Claimant Trust, they are effectively bearing the cost as any recovery will supposedly go to them.  *Id.*

4.      While the Litigation Trustee disputes these assertions, he requests—in the interests of judicial economy—that the Court stay this Action until September 30, 2023, and to continue the stay thereafter until one party to the Action provides 30 days' written notice to all other parties and the Court of their intent to resume the Action (the "Stay Period").  The Stay Period will preserve Claimant Trust assets and enable further consummation of the confirmed Plan, all of which is expected to reduce the uncertainty that exists today.

5.      The relief sought directly addresses the concerns set forth in the Valuation Motions (and elsewhere) that this Action is an unnecessary waste of assets.  Surprisingly, Defendants have

2

not agreed to the relief sought herein.  Accordingly, the Litigation Trustee is forced to make this

motion for a stay, even though the relief being sought is plainly beneficial to all parties.

## **RELEVANT BACKGROUND**

### A.    **THE DEBTOR FILES FOR BANKRUPTCY AND THE LITIGATION SUB-TRUST IS CREATED**

6.    On October 16, 2019 (the "Petition Date"), HCMLP filed a voluntary petition for

relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the

District of Delaware (the "Delaware Bankruptcy Court").  On December 4, 2019, the Delaware

Bankruptcy Court entered an order transferring venue of HCMLP's bankruptcy case to this Court.

7.    Shortly after the case was transferred, HCMLP's committee of unsecured creditors

(the "Committee") informed HCMLP that it intended to seek appointment of a chapter 11 trustee

because it did not believe Dondero could act as an estate fiduciary based on his past conduct.  To

avoid a trustee, Dondero and HCMLP entered into a settlement with the Committee which, among

other things, appointed an independent board (the "Independent Board") to manage the

bankruptcy.[4]

8.    In August 2020, HCMLP, Dondero, the Committee, and HCMLP's largest creditors

entered into mediation, resulting in settlements with HCMLP's largest creditors but not a global

settlement with Dondero.  Thereafter, HCMLP and the Committee began negotiating a plan of

reorganization that would monetize HCMLP's assets and distribute the proceeds to creditors.

9.    On February 22, 2021, this Court entered the *Order (i) Confirming the Fifth

Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii)

Granting Related Relief* [Bankr. Dkt. 1943] (the "Confirmation Order"), which confirmed the Plan

---

[4]   Bankr. Docket No. 339 (approving settlement and appointment of Independent Board).

Bankr. <mark>Dkt. No. 1808</mark>. The Plan went effective on August 11, 2021 (the "Effective Date"). Bankr. <mark>Dkt. 2700</mark>. Among other things, the Plan created the Litigation Sub-Trust, as a "sub-trust established within the Claimant Trust or as a wholly-owned subsidiary of the Claimant Trust," for the purpose of "investigating, litigating, and settling the Estate Claims" transferred to it by the Claimant Trust pursuant to the Plan. Bankr. <mark>Dkt. 1808</mark> ¶¶ 81, 83. Proceeds from the Litigation Trust's pursuit of claims "shall be distributed . . . to the Claimant Trust for distribution to the Claimant Trust Beneficiaries[.]" *Id.* at 27.

### B.     THE LITIGATION SUB-TRUST COMMENCES THIS ACTION

10.     The Litigation Trustee commenced this Action on October 15, 2021. The Complaint asserts 36 causes of action against 23 Defendants. The Complaint asserts claims for the avoidance and recovery of intentional and constructive fraudulent transfers and obligations under sections 544, 548, and 550 of the Bankruptcy Code, illegal distributions under Delaware partnership law, breach of fiduciary duty, declaratory judgment that certain entities are liable for the debts of others by statute or under an alter ego theory, aiding and abetting or knowing participation in breach of fiduciary duty, civil conspiracy, tortious interference with prospective business relations, breach of contract, conversion, unjust enrichment, and disallowance or subordination of claims under sections 502 and 510 of the Bankruptcy Code.

11.     While the broad scope of the claims ensured that this would be a substantial litigation, the Defendants in this action have exacerbated the cost by propounding sweeping and unreasonable discovery of HCMLP and third parties, while simultaneously obstructing the Litigation Trustee's discovery of Defendants. As a result, to date, the Litigation Trustee has reviewed over 700,000 documents and produced 655,432 documents comprising 7,390,270

pages.[5]  Defendants have responded by demanding ever more documents, from more complicated

and difficult to search sources,[6] and have served 45 subpoenas seeking the production of

documents from third parties.[7]  Remarkably, Defendants have yet to produce a single document in

response to the Litigation Trustee's requests.[8]

### C.     THE DONDERO PARTIES COMPLAIN ABOUT THE COSTS OF THIS ACTION AND CONTEND IT IS UNNECESSARY

12.     On June 30, 2022, Dugaboy filed a *Motion for Determination of the Value of the*

*Estate and Assets Held by the Claimant Trust* [Bankr. Dkt. 3382] (the "First Valuation Motion"),

seeking a valuation of the Claimant Trust's assets.  This Court denied the First Valuation Motion

as procedurally improper on December 7, 2022.  Bankr. Dkt. 3645.  Accordingly, on February 6,

2023, Dugaboy and HMIT filed a *Motion for Leave to File Proceeding* [Bankr. Dkt. 3662] (the

"Second Valuation Motion," and together with the First Valuation Motion, the "Valuation

Motions"), this time making baseless allegations against HCMLP, the Claimant Trust, and their

fiduciaries and professionals, and seeking leave to file an Adversary Proceeding seeking

information concerning the Claimant Trust.

---

[5]  *See* Appendix Ex. A - Loigman Decl. ¶ 2.

[6]  After the Litigation Trustee agreed to produce over 859 prepetition emails and attachments, Defendants demanded an even more expansive search into every single non-e-mail system the debtor had used in the past ten years, without any regard as to whether those sources would duplicate the pre-petition email results.  Specifically, Defendants made over 95 additional requests, spanning from requesting "[a]ll documents from 1/1/2009 through 10/15/2019 maintained locally on the computers issued to" twenty-two different custodians; "all documents" found within debtor's entire executive accounting drive, and full folder contents for any folder in the debtor's entire shared drive in which "[a]ny document" hit on certain key words in the title.  *See* Appendix Ex. C (Annex A to Defendants' March 13, 2023 Letter to Plaintiff, rows 9, 22, 44).

[7]  *See* Dkts. 194, 233-261, 278-82, 294-96, 305-08, 311-13, 316.

[8]  In fact, to date, not a single Defendant has even provided a complete hit report in response to search terms that the Litigation Trustee sent ***over four months ago***, on December 13, 2022.  *See* Appendix Ex. A - Loigman Decl. ¶ 3. Counsel to NexPoint and HCMFA provided a partial hit report on March 13, 2023.  *Id.*

13.     In the Valuation Motions, Dugaboy and HMIT assert that they have residual contingent interests in the Claimant Trust because they hold unvested, contingent trust interests.[9] Dugaboy and HMIT further assert that the Claimant Trust has sufficient assets to pay all current Claimant Trust Beneficiaries in full and that they are thus somehow in the money (notwithstanding that that is not how the Plan works).  Finally, Dugaboy and HMIT assert that protections are necessary to preserve the Claimant Trust's assets and that continued prosecution of this Action "threatens to depress the value of the Claimant Trust" (*Id*. at ¶ 18) and diminish the value of their contingent, residual interests.

14.     This is not the first time the Dondero Parties have complained about the cost of this Action and contended that it is unnecessary since the value of the Claimant Trust's assets supposedly exceed the value of the Claimant Trust Beneficiaries' interests.[10]

15.     While reserving the Claimant Trusts' rights to contest the Dondero Parties' assertions, the Litigation Trustee believes it would be prudent to stay the Action during the Stay Period to allow assets to be monetized pursuant to the Plan while conserving resources for all parties and third parties.  And, while the Defendants have not consented to this relief, it is astounding that they would contest it because it directly addresses the concerns set forth in the Valuation Motions.  Accordingly, the Litigation Trustee respectfully requests that this Court stay proceedings in this Action for six months until September 30, 2023, and to continue the stay thereafter until one party to the Action provides 30 days' written notice to all other parties and the Court of their intent to resume the Action.

---

[9] Dugaboy and HMIT were members of Class 10 and Class 11 under the Plan, but they will receive no interest or rights in the Claimant Trust unless and until all senior classes have been paid in full with interest, all disputed claims have been resolved, and the Claimant Trustee has filed a certificate with this Court.  Bankr. Dkt. 1943 ¶ 60b.

[10] *See, e.g, Reply Brief of Appellant, The Dugaboy Investment Trust*, Case No. 22-10831, Document No. 00516578672 at 9 (5th Cir. Dec. 14, 2022) ("[T]he Kirschner litigation continues to this day to erode the value of the estate, which most significantly impacts" Dugaboy's and HMIT's pecuniary interests).

## **ARGUMENT**

16.     Pursuant to section 105(a) of the Bankruptcy Code, the Court "may issue any order . . . that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).  Moreover, the Supreme Court has held:

> [T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.  How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.

*Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936).  This Court possesses broad discretion to grant stays, particularly where doing so is unlikely to cause harm to any other party.  *See, e.g.*, *Fishman Jackson PLLC v. Israely*, 180 F. Supp. 3d 476, 483 (N.D. Tex. 2016) ("Courts have 'broad' discretion to grant stay[s] . . . especially when there is not a 'fair possibility' that the stay 'will work damage to someone else.'"); *In re Ramu Corp.*, 903 F.2d 312, 318 (5th Cir. 1990) ("The stay of a pending matter is ordinarily within the trial court's wide discretion to control the course of litigation . . . .  This authority has been held to provide the court the 'general discretionary power to stay proceedings before it in control of its docket and in the interests of justice.'" (internal citations omitted)).

17.     While stays should "not be immoderate or of an indefinite duration," *Fishman*, 180 F. Supp. 3d at 483, courts routinely grant stays of six months where doing so promotes judicial efficiency.  *See, e.g.*, *14th St. Props., LLC v. S. Fid. Ins. Co.*, No. CV 22-1593, 2023 WL 416317, at *1 (E.D. La. Jan. 26, 2023) (granting stay and administratively closing matter for six months due to state insolvency proceedings); *Integrated Claims Sys., LLC v. Old Glory Ins. Co.*, No. 2:15-CV-00412-JRG, 2020 WL 1027771, at *1 (E.D. Tex. Mar. 3, 2020) (granting motion to stay for six months); *Cleveland Air Serv., Inc. v. Pratt & Whitney Canada*, No. 4:13-CV-161-DMB-DAS, 2016 WL 4179987, at *2 n.3 (N.D. Miss. Aug. 5, 2016) (staying discovery for six months); *Maples*

*v. Donzinger*, No. CIV.A. 13-223, 2014 WL 688965, at *2 (E.D. La. Feb. 21, 2014) (granting a six month stay). Courts have also granted stays which may only be lifted by the parties after a determined time. *See, e.g.*, *Scarborough v. Integricert, LLC*, No. 6-12-CV-00396, 2014 WL 12662272, at *3 (W.D. La. Apr. 4, 2014) ("Lastly, this Court's intention is not to stay the case for an indefinite period. To the contrary, the Court will issue a stay for a period of one-hundred and twenty days, at the end of which, either party may move to lift the stay upon a showing of good cause. Thus, the stay will not last for an 'indefinite' period such as Scarborough fears.").

18.     Here, the Action should be stayed in the interests of judicial economy and efficiency and in the interests of the recipients of the 45 third-party subpoenas served by Defendants, the Litigation Sub-Trust, the Claimant Trust, and even the Defendants—two of whom (Dugaboy and HMIT) have actually advocated for the relief requested herein. A grant of the requested stay will enable HCMLP to focus on executing its Plan without incurring further expenses on this litigation, which, as explained above, have been exacerbated by Defendants' litigation tactics. *See In re Janes*, No. 92-2712-BKC-3P7, 1993 WL 476493, at *4 (Bankr. M.D. Fla. Nov. 8, 1993) (granting "Defendant's motion to stay adversary proceeding," and noting that "one of the goals of the code is maximization of assets available in the estate to pay creditors"). The result is a conservation of HCMLP and Claimant Trust funds, while maintaining the Litigation Trustee's flexibility to pursue the claims in this Action should it be necessary in order to satisfy the Claimant Trust's obligations.

19.     A stay would also promote judicial efficiency because pursuit of this litigation *may* prove unnecessary, in which case the Court would be spared the burden of further adjudicating this Action.

20.     Finally, a stay will benefit Defendants, not harm them—as their own repeated complaints demonstrate.  Like the Claimant Trust, Defendants can defer extensive litigation expenses during the Stay Period, and perhaps permanently, depending on the results of the monetization of HCMLP's remaining assets and the satisfaction of indemnification obligations. Moreover, staying this case addresses the very issue Defendants raise in their Valuation Motions; namely, purported depletion of Claimant Trust assets through the burden of litigation expenses.

21.     In sum, the Stay Period—which is neither "immoderate" nor "of an indefinite duration"—falls within this Court's broad discretion.  *Fishman*, 180 F. Supp. 3d at 483; *see also McKnight v. Blanchard*, 667 F.2d 477, 479 (5th Cir. 1982) (vacating indefinite stay that could last for seven years or longer where trial court "gave no reason for such a protracted stay").  The requested stay squarely serves the interests of judicial economy, ensures efficient management of this adversary proceeding, and is in the best interests of the parties to this Action and the Claimant Trust Beneficiaries.

## CONCLUSION

22.     For the foregoing reasons, the Trustee respectfully requests that the Court grant an Order staying all proceedings in the Action through the Stay Period.

Dated: March 24, 2023

Respectfully submitted,

SIDLEY AUSTIN LLP
/s/ *Paige Holden Montgomery*
Paige Holden Montgomery
Juliana L. Hoffman
2021 McKinney Avenue
Suite 2000
Dallas, Texas 75201
Telephone: (214) 981-3300
Facsimile: (214) 981-3400

-and-

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Deborah J. Newman (admitted *pro hac vice*)
Robert S. Loigman (admitted *pro hac vice*)
Calli Ray (admitted *pro hac vice*)
Kate Scherling (admitted *pro hac vice*)
Anna Deknatel (admitted *pro hac vice*)
Aaron M. Lawrence (admitted *pro hac vice*)
51 Madison Avenue
Floor 22
New York, NY 10010
Telephone:  (212) 849-7000

*Counsel for Marc S. Kirschner, as Litigation*
*Trustee of the Highland Litigation Sub-Trust*