

**Samuel A. Schwartz, Esq.**
office: 702.385.5544
fax: 702.442.9887
601 E. Bridger Avenue
Las Vegas, NV 89101

April 28, 2023

Lyle W. Cayce
Clerk of the Court
United States Court of Appeals
For the Fifth Circuit
F. Edward Hebert Building
600 S. Maestri Place
New Orleans, LA 70130

Re: *NexPoint Advisors, L.P. v. Pachulski Stang Ziehl & Jones, LLP, et al.,* **Case No. 22-10575;** <u>**Notice of Supplemental Authorities under FRAP 28(j) and Request for Supplemental Briefing under 5th Cir. R. 28.4**</u>

Dear Sir:

Under Federal Rule of Appellate Procedure 28(j) and 5th Cir. R. 28.4, and as counsel to the Appellant, I write for two purposes: (1) to alert the Court to the recent decision of the Supreme Court of the United States in *MOAC Mall Holdings LLC v. Transform Holdco LLC,* ___U.S.___, 2023 U.S. LEXIS 1666 (Apr. 19, 2023) ("**MOAC**"), attached as <u>Exhibit 1</u> and (2) to request supplemental briefing on *MOAC*'s impact here under 5th Cir. R. 28.4 on this case.

Briefly, *MOAC* addressed the alleged jurisdictional impact of 11 U.S.C. § 363(m) on the federal courts' appellate jurisdiction. *See id.* at *14. The Supreme Court unanimously held that § 363(m) is not a jurisdictional bar to the exercise of appellate jurisdiction. *Id.* The lynchpin of *MOAC*'s jurisdictional analysis is of pivotal importance in this case.

The *MOAC* Court made expressly clear that limitations on the subject matter jurisdiction of the federal courts are subject to a "clear-statement rule." *Id.* at *16. "And we only treat a [statutory] provision as jurisdictional if Congress 'clearly states' as much…This clear-statement rule implements 'Congress' likely intent' regarding whether *non*compliance with a precondition 'governs a court's adjudicatory capacity.'" *Id.*

That clear statements limiting the subject matter jurisdiction of the federal courts must issue from Congress and embody Congressional intent necessarily negates the ability of the courts to apply judge-made doctrines like the "person aggrieved" limitation on appellate standing to withdraw jurisdiction granted by Congress. *See id.*; *see also* 28 U.S.C. § 158(a). More problematic still is that Congress' clear statement on this issue is one of statutory repeal. *See Gibbs & Bruns LLP v. Coho Energy, Inc. (In re Coho Energy, Inc.),* 395 F.3d 198, 202 (5th Cir. 2004). Continued

**SCHWARTZ LAW**

application of the "person-aggrieved" standard following *MOAC* renders the need for a Congressional clear statement of jurisdictional impact a dead letter.

Sincerely,

/s/ *Samuel A. Schwartz*

Samuel A. Schwartz, Esq.

# EXHIBIT 1

 Neutral
As of: April 28, 2023 8:24 PM Z

# *MOAC Mall Holdings LLC v. Transform Holdco LLC*

Supreme Court of the United States

December 5, 2022, Argued; April 19, 2023, Decided

No. 21-1270.

## Reporter

2023 U.S. LEXIS 1666 *

MOAC MALL HOLDINGS LLC, PETITIONER v. TRANSFORM HOLDCO LLC, ET AL.

**Notice:** The Lexis pagination of this document is subject to change pending release of the final published version.

**Prior History: [*1]** ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

*MOAC Mall Holdings LLC v. Transform Holdco LLC (In re Sears Holdings Corp.), 2021 U.S. App. LEXIS 37358, 2021 WL 5986997 (2d Cir. N.Y., Dec. 17, 2021)*

**Disposition:** Vacated and remanded.

## Core Terms

lease, authorization, in rem jurisdiction, courts, district court, mootness, preconditions, lower court, nonjurisdictional, modification, purchaser, bankruptcy court, clear statement, reversal, appeals, parties

## Case Summary

### Overview

HOLDINGS: [1]-Where debtor in possession agreed to sell most of its assets to respondent, including its right to designate to whom a lease between the debtor and some landlord should be assigned, a challenge of a transfer by a landlord was not moot, on the basis that the transfer could not be undone, because the landlord's prospects of success were not pertinent to the mootness inquiry; [2]-*11 U.S.C.S. § 363(m)*, which permits a debtor (or a trustee) to sell or lease the bankruptcy estate's property outside of the ordinary course of the bankrupt entity's business, was not a jurisdictional provision because nothing in *§ 363(m)*'s limits purported to govern a court's adjudicatory capacity.

### Outcome

Judgment vacated and case remanded; 9-0 Decision.

## LexisNexis® Headnotes

Bankruptcy Law > ... > Administrative Powers > Estate Property Lease, Sale & Use > Ordinary Course of Business

Bankruptcy Law > Administrative Powers > Estate Property Lease, Sale & Use > Sale of Estate Property

Bankruptcy Law > Administrative Powers > Estate Property Lease, Sale & Use > Use of Estate Property

*HN1*[⬇] **Estate Property Lease, Sale & Use, Ordinary Course of Business**

Under conditions prescribed by Congress, the Bankruptcy Code permits a debtor (or a trustee) to sell or lease the bankruptcy estate's property outside of the ordinary course of the bankrupt entity's business. *11 U.S.C.S. § 363(b).*

Bankruptcy Law > Administrative Powers > Executory Contracts & Unexpired Leases > Assignments

Real Property Law > Landlord & Tenant > Lease Agreements > Assignments

Real Property Law > ... > Lease Agreements > Commercial Leases > Shopping Center Leases

Bankruptcy Law > Administrative Powers > Executory Contracts & Unexpired Leases > Existing

Defaults

Bankruptcy Law > Administrative Powers > Executory Contracts & Unexpired Leases > Rejections

*HN2*[⬇]  **Executory Contracts & Unexpired Leases, Assignments**

*11 U.S.C.S. § 365* prohibits assignment of an unexpired lease to anyone without adequate assurance of future performance by the assignee, *§ 365(f)(2)(B)*, and further establishes special adequate-assurance criteria related to shopping centers, *§ 365(b)(3)*. In that context, adequate assurance includes assurances that (1) the proposed assignee has a similar financial condition and operating performance as the debtor as of the time the debtor became the lessee under the lease, and (2) the assignment will not disrupt any tenant mix or balance in the shopping center. *§ 365(b)(3)(A)*, *(D)*.

Civil Procedure > ... > Justiciability > Mootness > Real Controversy Requirement

*HN3*[⬇] **Mootness, Real Controversy Requirement**

A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party. The case remains live as long as the parties have a concrete interest, however small, in the outcome of the litigation.

Governments > Legislation > Interpre
tation

<u>HN4</u>[⤓]  **Legislation, Interpretation**

Congressional statutes are replete with
directions to litigants that serve as
preconditions to relief. Filing deadlines
are classic examples. So are
preconditions to suit, like exhaustion
requirements. So, too, are statutory
limitations on coverage, or on a statute's
scope, such as the elements of a
plaintiff's claim for relief. Congress can,
if it chooses, make compliance with such
rules important and mandatory.

Governments > Courts > Authority to
Adjudicate

<u>HN5</u>[⤓]  **Courts, Authority to
Adjudicate**

An unmet jurisdictional precondition
deprives courts of power to hear the
case, thus requiring immediate
dismissal. And jurisdictional rules are
impervious to excuses like waiver or
forfeiture. Courts must also raise and
enforce them sua sponte.

Governments > Legislation > Interpre
tation

<u>HN6</u>[⤓]  **Legislation, Interpretation**

Jurisdictional rules pertain to the power
of the court rather than to the rights or
obligations of the parties. And the U.S.

Supreme Court only treats a provision as
jurisdictional if Congress clearly states
as much. This clear-statement rule
implements Congress' likely intent
regarding whether noncompliance with a
precondition governs a court's
adjudicatory capacity. Congress
ordinarily enacts preconditions to
facilitate the fair and orderly disposition
of litigation and would not heedlessly
give those same rules an unusual
character that threatens to upend that
orderly progress. Jurisdictional character
is an exception to the ordinary operation
of the adversarial system. That said,
Congress need not use "magic words" to
convey its intent that a statutory
precondition be treated as jurisdictional.
Traditional tools of statutory construction
can reveal a clear statement. But the
statement must indeed be clear; it is
insufficient that a jurisdictional reading is
plausible, or even better, than
nonjurisdictional alternatives.

Bankruptcy Law > Administrative
Powers > Estate Property Lease,
Sale & Use > Modification &
Reversal

<u>HN7</u>[⤓]  **Estate Property Lease, Sale &
Use, Modification & Reversal**

There is nothing in *11 U.S.C.S. §
363(m)*'s limits that purports to govern a
court's adjudicatory capacity.

Bankruptcy Law > Administrative
Powers > Estate Property Lease,

Sale & Use > Modification & Reversal

## HN8[⬇] Estate Property Lease, Sale & Use, Modification & Reversal

Far from addressing "a court's authority," or referring in any way to the jurisdiction of the district courts, *11 U.S.C.S. § 363(m)* takes as a given the exercise of judicial power over any authorization under *§ 363(b)* or *§ 363(c)* (covered authorizations). Indeed, *§ 363(m)* plainly contemplates that appellate courts might "reverse or modify" any covered authorization, with a proviso: Sometimes, the court's exercise of power may not accomplish all the appellant wishes, because the reversal or modification of a covered authorization may not affect the validity of a sale or lease under such authorization to a good-faith purchaser or lessee under certain prescribed circumstances. *§363(m)*. And the caveat is itself caveated; *§ 363(m)*'s constraints are simply inapplicable where the sale or lease was made to a bad-faith purchaser or lessee, or if the sale or lease is stayed pending appeal, or (for that matter) if the court does something other than "reverse" or "modify" the authorization.

Bankruptcy Law > Administrative Powers > Estate Property Lease, Sale & Use > Modification & Reversal

## HN9[⬇] Estate Property Lease, Sale & Use, Modification & Reversal

*11 U.S.C.S. § 363(m)* reads like a statutory limitation that is tied in some instances to the need for a party to take certain procedural steps at certain specified times.

Bankruptcy Law > Procedural Matters > Jurisdiction > Federal District Courts

Bankruptcy Law > Administrative Powers > Estate Property Lease, Sale & Use > Modification & Reversal

## HN10[⬇] Jurisdiction, Federal District Courts

Congress separated *11 U.S.C.S. § 363(m)* from the Code provisions that recognize federal courts' jurisdiction over bankruptcy matters. *28 U.S.C.S. §§ 1334(a)-(b)*, *(e)*, *157*, 158.

Bankruptcy Law > Procedural Matters > Jurisdiction > Federal District Courts

## HN11[⬇] Jurisdiction, Federal District Courts

11 U.S.C.S. § 1334 grants bankruptcy jurisdiction to the district courts in the first instance, and those courts may "refer" such jurisdiction to bankruptcy courts under prescribed circumstances.

Governments > Legislation > Interpretation

_HN12_[⬇]  **Legislation, Interpretation**

The U.S. Supreme Court routinely holds that congressional commands are nonjurisdictional despite emphatic directives.

> Bankruptcy Law > Administrative Powers > Estate Property Lease, Sale & Use > Modification & Reversal

_HN13_[⬇]  **Estate Property Lease, Sale & Use, Modification & Reversal**

If a court, consistent with _11 U.S.C.S. § 363(m)_, issues a judgment affecting a consummated sale's validity that draws on any in rem jurisdiction the Code confers in 11 U.S.C.S. § 1334, that conferral authorizes the exercise of in rem power with respect to a res that has left the estate.

> Bankruptcy Law > Procedural Matters > Jurisdiction

> Civil Procedure > ... > In Rem & Personal Jurisdiction > In Rem Actions > True In Rem Actions

_HN14_[⬇]     **Procedural Matters, Jurisdiction**

Bankruptcy-court jurisdiction is not purely in rem.

> Bankruptcy Law > Administrative Powers > Estate Property Lease,

Sale & Use > Modification & Reversal

Governments > Courts > Authority to Adjudicate

_HN15_[⬇]  **Estate Property Lease, Sale & Use, Modification & Reversal**

Congress has not clearly stated that _11 U.S.C.S. § 363(m)_ is a limit on judicial power, rather than a mere restriction on the effects of a valid exercise of that power when a party successfully appeals a covered authorization.

## Syllabus

The question presented—whether _11 U. S. C. §363(m) of the Bankruptcy Code_ is jurisdictional—arises in the context of the Chapter 11 bankruptcy of Sears, Roebuck and Co. Sears sold most of its pre-bankruptcy assets to respondent Transform Holdco LLC, including the right to designate to whom a lease between Sears and petitioner MOAC Mall Holdings LLC should be assigned. MOAC leases space to tenants at the Minnesota Mall of America. The agreement with Transform required Sears to assign the lease to any assignee duly designated by Transform. When Transform later designated the Mall of America lease for assignment to its wholly owned subsidiary, MOAC filed an objection with the Bankruptcy Court, arguing that Sears had not shown "adequate assurance of future performance by the assignee" as the Code requires, _§365(f )(2)(B)_. The

Bankruptcy Court disagreed with MOAC's adequate-assurance argument and issued an order authorizing the lease assignment (Assignment Order). The Code contemplates that interested parties like MOAC may appeal such an order, but the effect of a successful appeal is limited by *§363(m)*, which states that "[t]he reversal or modification **[*2]** on appeal of an authorization under [*§363(b)* or *§363(c)*] of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith . . . unless such authorization and such sale or lease were stayed pending appeal." Fearing the implications of *§363(m)* on an appeal, MOAC sought to stay the Assignment Order. The Bankruptcy Court denied the stay, reasoning that an appeal of the Assignment Order did not qualify as an appeal of an authorization described in *§363(m)*, and emphasizing Transform's explicit representation that it would not invoke *§363(m)* against MOAC's appeal. After the Assignment Order became effective, Sears assigned the lease to Transform's designee, and MOAC appealed the Assignment Order. The District Court sided with MOAC on the adequate-assurance issue. Transform filed for rehearing, arguing that *§363(m)* deprived the District Court of jurisdiction. The District Court determined that Second Circuit precedent bound it to treat *§363(m)* as jurisdictional and dismissed the appeal. The Second Circuit affirmed.

*Held*: *Section 363(m)* is not a jurisdictional provision. Pp. 5-15.

(a) This case is not moot. Transform argues that this case is moot because **[*3]** MOAC's ultimate relief hinges on the Bankruptcy Court's ability to reconstitute the Mall of America lease as property of the estate, and no legal vehicle remains available for undoing the lease transfer under the Code or otherwise. A case remains live "[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation," and it "'becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'" *Chafin v. Chafin, 568 U. S. 165, 172, 133 S. Ct. 1017, 185 L. Ed. 2d 1*. As in *Chafin*, MOAC simply seeks "typical appellate relief," *id., at 173, 133 S. Ct. 1017, 185 L. Ed. 2d 1*, and it cannot be said that the parties have "no 'concrete interest,'" *id., at 176, 133 S. Ct. 1017, 185 L. Ed. 2d 1*, in whether MOAC obtains that relief. Transform's response—which MOAC vigorously disputes—is that any ultimate vacatur of the Assignment Order will not matter irrespective of the Court's answer to the question presented. This kind of argument is foreclosed by *Chafin*. This Court declines to act as a court of "first view" to determine if Transform is correct that no relief remains legally available. *Zivotofsky v. Clinton, 566 U. S. 189, 201. Pp. 5-6, 132 S. Ct. 1421, 182 L. Ed. 2d 423*.

(b) *Section 363(m)* is not a jurisdictional provision under this Court's clear-

statement precedents. Pp. 7-15.

(1) Congressional statutes are replete with "preconditions to relief," *Fort Bend County v. Davis, 587 U. S. ___, ___, 139 S. Ct. 1843, 1849, 204 L. Ed. 2d 116*, such as filing **[\*4]** deadlines, see *United States v. Kwai Fun Wong, 575 U. S. 402, 410, 135 S. Ct. 1625, 191 L. Ed. 2d 533*, and exhaustion requirements, see ***Reed Elsevier, Inc. v. Muchnick, 559 U. S. 154, 157-158, 166, 130 S. Ct. 1237, 176 L. Ed. 2d 18, and n. 6***. Congress can, if it chooses, make compliance with such rules "important and mandatory," *Henderson v. Shinseki, 562 U. S. 428, 435, 131 S. Ct. 1197, 179 L. Ed. 2d 159*, but that does not, in itself, make such rules jurisdictional. Because the "jurisdictional" label is consequential and has sometimes been loosely used by this Court, the Court has endeavored "to bring some discipline" to this area. *Ibid.* This Court has clarified that the jurisdictional label bears "on the power of the court, rather than [on] the rights or obligations of the parties." ***Reed Elsevier, 559 U. S., at 161, 130 S. Ct. 1237, 176 L. Ed. 2d 18***. The Court will only treat a provision as jurisdictional if Congress "'clearly states'" as much. *Boechler v. Commissioner, 596 U. S. ___, ___, 142 S. Ct. 1493, 1497, 212 L. Ed. 2d 524*. This clear-statement rule does not require Congress to use "'magic words,'" but Congress's statement must be clear and not merely "plausible" or "better" than nonjurisdictional alternatives. *Id., at ___, 142 S. Ct. 1493, 212 L. Ed. 2d 524*. Pp. 7-8.

(2) The Court identifies nothing in *§363(m)*'s limits that purports to "gover[n] a court's adjudicatory capacity." *Henderson, 562 U. S., at 435, 131 S. Ct. 1197, 179 L. Ed. 2d 159*. The text does not address a court's authority or refer to the jurisdiction of district courts. Instead, the provision takes as a given the exercise of judicial power over any "authorization under *subsection (b)*" and explicitly contemplates that appellate courts might **[\*5]** "revers[e] or modif[y]" *any* covered authorization, even though a reversal or modification of a covered authorization may not "affect the validity of a sale or lease under such authorization" to a good-faith purchaser or lessee under certain prescribed circumstances. This is not the stuff of which clear statements are made. Rather, this Court has treated similar statutory caveats as "significan[t] evidence of nonjurisdictional status." ***Reed Elsevier, 559 U. S., at 165, 130 S. Ct. 1237, 176 L. Ed. 2d 18***. Given *§363(m)*'s clear expectation that courts will exercise jurisdiction over any covered authorization, its text can be read as merely cloaking certain good-faith purchasers or lessees with a targeted protection of their newly acquired property interest, applicable even when an appellate court properly exercises jurisdiction. See *Scarborough v. Principi, 541 U. S. 401, 414, 124 S. Ct. 1856, 158 L. Ed. 2d 674*. *Section 363(m)* reads like a "statutory limitation," *Arbaugh v. Y & H Corp., 546 U. S. 500, 516, 126 S. Ct. 1235, 163 L. Ed. 2d 1097*, that is tied in some instances to the need

for a party to take "certain procedural steps at certain specified times," *Henderson, 562 U. S., at 435, 131 S. Ct. 1197, 179 L. Ed. 2d 159*.

Statutory context further clinches the case. *Section 363(m)* is separated from the Code provisions that recognize federal courts' jurisdiction over bankruptcy matters, *28 U. S. C. §§1334(a)-(b), (e)*. And unlike other Code provisions, see *§305(c)*, *§363(m)* contains no "clear tie" to the Code's plainly jurisdictional provisions, *Boechler, 596 U. S., at ___, 142 S. Ct. 1493, 212 L. Ed. 2d 524* **[\*6]**. That *§363(m)* issues directions does not suffice to make it jurisdictional, as the Court routinely holds statutory commands nonjurisdictional notwithstanding emphatic directives. Pp. 9-11.

(3) Transform's creative arguments do not excavate a clear statement from *§363(m)*'s unassuming text. First, appealing to supposed traditional principles of *in rem* jurisdiction, Transform insists that *§363(m)* is jurisdictional because it reflects those principles. This follows, Transform says, because *§363(m)* operates to ensure that (absent a stay) courts cannot disturb a transfer to a good-faith purchaser, thereby confirming that the court lacks a basis to exercise *in rem* jurisdiction over it. Setting aside MOAC's credible retort to this argument, Transform's contentions merely offer *a* reason to think Congress intended *§363(m)* to be jurisdictional. That, without more, does not show a clear jurisdictional statement. See *Boechler, 596 U. S., at ___, 142 S. Ct. 1493, 212 L. Ed. 2d 524*. Second, Transform maintains that former Federal Rule of Bankruptcy Procedure 805 was understood to be jurisdictional because some appellate courts relied upon it to dismiss appeals that challenged the validity of a sale, without a consideration of the merits. Transform says that Congress transplanted Rule 805 wholesale into *§363(m)*. But this argument fails at the gate: **[\*7]** every lower court case Transform cites for support predates *§363(m)*'s 1978 enactment, and thus long predates the Court's modern efforts on jurisdictional nomenclature. The Court routinely rejects such arguments, and does so here. Pp. 11-15.

Vacated and remanded.

**Counsel: Douglas H. Hallward-Driemeier** argued the cause for petitioner.

**G. Eric Brunstad, Jr.** argued the cause for respondent.

**Judges:** Jackson, J., delivered the opinion for a unanimous Court.

**Opinion by:** JACKSON

## Opinion

JUSTICE JACKSON delivered the opinion of the Court.

*HN1*[⬆] Under conditions prescribed by

Congress, the Bankruptcy Code permits a debtor (or a trustee) to sell or lease the bankruptcy estate's property outside of the ordinary course of the bankrupt entity's business. *11 U. S. C. §363(b)*. Interested parties may file an objection to such a sale or lease, and may appeal if the court authorizes a sale or lease of the estate's property over their objection. But *§363(m)* restricts the effect of such an appeal, if successful.

Specifically, *§363(m)* states that

> "[t]he reversal or modification on appeal of an authorization under [*§363(b)* or *§363(c)*] of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed **[*8]** pending appeal."

Accordingly, sometimes, a successful appeal of a judicial authorization to sell or lease estate property will not impugn the validity of a sale or lease made under that authorization.

In this case, we are called upon to decide whether *§363(m)*'s strictures are jurisdictional. If so, a party may invoke that provision at any time—without fear of waiver, forfeiture, or similar doctrines interposing. If not, courts can apply such doctrines when evaluating *§363(m)* issues, where appropriate. For the reasons explained below, we conclude

that *§363(m)* is not a jurisdictional provision.

I

This saga began in 2018, when Sears, Roebuck and Co. (Sears) filed for Chapter 11 bankruptcy. That filing created a bankruptcy estate that included (with exceptions not relevant here) "interests of the debtor in property." *§541(a)(1)*. Such an estate is sometimes administered by a bankruptcy trustee; other times the debtor itself administers it as the "debtor in possession." *§§1101*, *1107*; see *Mission Product Holdings, Inc. v. Tempnology, LLC, 587 U. S. ___, ___, 139 S. Ct. 1652, 1658, 203 L. Ed. 2d 876 (2019)*. Sears self-administered, and as a debtor in possession, Sears had statutorily qualified powers to dispose of the estate's property. *§§1101*, *1107*, *363*.

Early in 2019, Sears exercised one of those powers: its right to "use, sell, or lease, other than in the ordinary **[*9]** course of business, property of the estate." *§363(b)(1)*. Sears agreed to sell most of its assets to respondent Transform Holdco LLC (Transform), after which the Bankruptcy Court issued an order (Sale Order) approving the agreement.

Among the assets conveyed in that sale was the right for Transform to "designate to whom a lease between Sears . . . and some landlord should be assigned." *In re Sears Holdings Corp., 616 B. R. 615, 619 (SDNY 2020) (Sears II)*. The agreement did not actually designate

any assignees; it simply meant that, if Transform duly designated an assignee, Sears had to assign the lease to the designee. One of the leases eligible for such assignment was Sears's lease with petitioner MOAC Mall Holdings LLC, which leases spaces to tenants at the Minnesota Mall of America.

*HN2*[⬆] Notably, and as relevant here, *§365* of the Code prohibits assignment of an unexpired lease to anyone without "adequate assurance of future performance by the assignee," *§365(f)(2)(B)*, and further establishes special adequate-assurance criteria related to "shopping center[s]," *§365(b)(3)*, a term the parties agree describes the Mall of America. In that context, adequate assurance includes assurances that (1) the proposed assignee has a "similar . . . financial condition and operating performance" as the debtor **[\*10]** "as of the time the debtor became the lessee under the lease," and (2) the assignment will not "disrupt any tenant mix or balance in [the] shopping center." *§§365(b)(3)(A)*, *(D)*.

Later in 2019, Transform designated the Mall of America lease for assignment to its wholly owned subsidiary, [1] and MOAC objected on the ground that Sears had failed to provide the requisite adequate assurance of future performance by Transform. The Bankruptcy Court disagreed and approved the assignment to Transform, in a decision that, like the lower courts, we will call the "Assignment Order."

Here is where *§363(m)* entered the picture. MOAC feared that, if it appealed the Assignment Order, Transform might argue that *§363(m)*'s restrictions limited or barred the appeal. [2] Looking to *§363(m)*'s safe harbor for certain orders that are "stayed pending appeal," MOAC sought to forestall any such argument by asking for a stay of the Assignment Order. The Bankruptcy Court denied MOAC's request for a stay. The court reasoned that an appeal of the Assignment Order did not qualify as an appeal of an authorization described in *§363(m)*, and it emphasized that Transform had explicitly represented that it would not invoke *§363(m)* against MOAC's appeal. Because no stay was granted, **[\*11]** the Assignment Order became effective, and Sears duly assigned the lease to Transform.

MOAC then appealed the Assignment Order to the District Court, which initially sided with MOAC and concluded that Transform did not satisfy the pertinent *§365* adequate-assurance provisions. It thus vacated the Assignment Order (as relevant) "to the extent it approved" Sears's assignment of the lease to Transform. *In re Sears Holdings Corp., 613 B. R. 51, 79 (SDNY 2020) (Sears I)*. Transform sought rehearing and—notably—backed away from its previous disclaimers, arguing for the first time that

---

[1] This corporate distinction is immaterial for present purposes, so we refer collectively to Transform and its subsidiary as "Transform."

[2] Whether this fear was justified under a proper interpretation of *§363(m)* is a question we need not, and so do not, decide today.

§363(m) deprived the District Court of jurisdiction to grant MOAC's requested relief. The District Court was "appalled" by Transform's gambit of waiting to invoke §363(m) until after losing the merits of the appeal, but determined that Second Circuit precedent bound it to treat §363(m) as jurisdictional, and thus not subject to "waiver [or] judicial estoppel." *Sears II, 616 B. R., at 624-625*. The District Court held that §363(m) was applicable and required it to dismiss the appeal, so it did so, leaving the Assignment Order unscathed. The Second Circuit affirmed, agreeing with the District Court's characterization of §363(m) as jurisdictional, based on Second Circuit precedent.

We granted MOAC's petition for certiorari to resolve the Circuit split **[*12]** that the Second Circuit's ruling reinforced. *597 U. S. ___, 142 S. Ct. 2867, 213 L. Ed. 2d 1089 (2022).* [3] Before this Court, Transform not only defends the Second Circuit's characterization of §363(m) as jurisdictional, but also urges us to dismiss this case on mootness grounds because the lease has already been transferred out of the estate via the assignment. Brief for Respondent 19-24.

II

We first address Transform's mootness claim. *HN3*[⬆] A "case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Chafin v. Chafin, 568 U. S. 165, 172, 133 S. Ct. 1017, 185 L. Ed. 2d 1 (2013)* (internal quotation marks omitted). The case remains live "'[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation.'" *Ibid.*

Stripped of its baubles, Transform's mootness argument is that MOAC's ultimate relief hinges on the Bankruptcy Court's ability to "reconstitut[e the leasehold] as property of the estate." Brief for Respondent 19. Transform asserts that such reconstitution is impossible unless the leasehold transfer is "avoid[ed]" under *11 U. S. C. §549*, which permits a debtor in possession to void certain transfers of estate property made after the bankruptcy case commences. But, according to Transform, only Sears can use *§549*. And, per Transform, not only did **[*13]** Sears waive any such avoidance claims in the Sale Order, but the time for using *§549* has now expired. The upshot for Transform's mootness argument is that no legal vehicle remains available for undoing the lease transfer, and therefore MOAC cannot possibly obtain any effectual relief, irrespective of our answer to the question presented.

Our cases disfavor these kinds of mootness arguments. In *Chafin*, for example, a mother invoking the Hague Convention on the Civil Aspects of International Child Abduction sought,

---

[3] Compare, *e.g.*, *In re Stanford, 17 F. 4th 116, 122 (CA11 2021)* (§363(m) is not jurisdictional), and *In re Energy Future Holdings Corp., 949 F. 3d 806, 820 (CA3 2020)* (same), with *In re WestPoint Stevens, Inc., 600 F. 3d 231, 248 (CA2 2010)* (§363(m) is jurisdictional).

and received, an order from a Federal District Court that her child be returned to Scotland from the United States, where the child was residing with her father. *568 U. S., at 168-171, 133 S. Ct. 1017, 185 L. Ed. 2d 1*. The father appealed, seeking reversal and a concomitant "'re-return'" order, *id., at 171, 173, 133 S. Ct. 1017, 185 L. Ed. 2d 1*, but in the interim the mother had removed the child to Scotland, so the appellate court dismissed the father's appeal as moot. *Id., at 171, 133 S. Ct. 1017, 185 L. Ed. 2d 1*. Before us, the mother defended the mootness holding on the grounds that the District Court on remand would lack the authority to "issue a re-return order either under the Convention or pursuant to its inherent equitable powers." *Id., at 174, 133 S. Ct. 1017, 185 L. Ed. 2d 1*. We disagreed. We said her argument went "to the meaning of the Convention and the legal **[*14]** availability of a certain kind of relief," and thus "confuse[d] mootness with the merits." *Ibid.* And, at least where the father's contrary re-return argument was not "so implausible that it [was] insufficient to preserve jurisdiction," his "prospects of success [were] therefore not pertinent to the mootness inquiry." *Ibid.* (citing *Steel Co. v. Citizens for Better Environment, 523 U. S. 83, 89, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998)*).

So too here. Like the father in *Chafin*, MOAC simply seeks "typical appellate relief: that the Court of Appeals reverse the District Court and that the District Court undo what it has done." *568 U. S., at 173, 133 S. Ct. 1017, 185 L. Ed. 2d 1*. And we cannot say that the parties have "no 'concrete interest,'" *id., at 176, 133 S. Ct. 1017, 185 L. Ed. 2d 1*, in whether MOAC obtains that relief. Transform's only retort—which MOAC vigorously disputes—is simply that any ultimate vacatur of the Assignment Order will not matter. *Chafin* forecloses this kind of argument. Here, as elsewhere, we decline to act as a court of "'first view,'" plumbing the Code's complex depths in "'the first instance'" to assure ourselves that Transform is correct about its contention that no relief remains legally available. *Zivotofsky v. Clinton, 566 U. S. 189, 201, 132 S. Ct. 1421, 182 L. Ed. 2d 423 (2012)*. [4]

III

With respect to the question that we granted certiorari to consider—whether *§363(m)* is a jurisdictional provision—our answer is no, for the reasons that follow. **[*15]**

A

---

[4] MOAC, naturally, disputes Transform's contentions. And MOAC's arguments about legally available forms of relief are not "so implausible that [they are] insufficient to preserve jurisdiction." *Chafin, 568 U. S., at 174, 133 S. Ct. 1017, 185 L. Ed. 2d 1* (citing *Steel Co. v. Citizens for Better Environment, 523 U. S., 89, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998)*). We need not take a definitive position on the correct resolution of

Transform's elaborate mootness argument to be confident that MOAC's disagreement is not frivolous. *Id., at 89, 118 S. Ct. 1003, 140 L. Ed. 2d 210* (explaining that an argument is implausible, in the relevant sense, when it is "'wholly insubstantial and frivolous . . . so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit'").

HN4[⬆] Congressional statutes are replete with directions to litigants that serve as "preconditions to relief." *Fort Bend County v. Davis, 587 U. S. ___, ___, 139 S. Ct. 1843, 1849, 204 L. Ed. 2d 116 (2019)*. Filing deadlines are classic examples. *United States v. Kwai Fun Wong, 575 U. S. 402, 410, 135 S. Ct. 1625, 191 L. Ed. 2d 533 (2015)*. So are preconditions to suit, like exhaustion requirements. ***Reed Elsevier, Inc. v. Muchnick, 559 U. S. 154, 157-158, 166, 130 S. Ct. 1237, 176 L. Ed. 2d 18, and n. 6 (2010)***. So, too, are "statutory limitation[s] on coverage," or "on a statute's scope," such as the "element[s] of a plaintiff's claim for relief." *Arbaugh v. Y & H Corp., 546 U. S. 500, 515-516, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006)*. Congress can, if it chooses, make compliance with such rules "important and mandatory." *Henderson v. Shinseki, 562 U. S. 428, 435, 131 S. Ct. 1197, 179 L. Ed. 2d 159 (2011)*. But knowing that much does not, in itself, make such rules jurisdictional. *Ibid.*

The "jurisdictional" label is significant because it carries with it unique and sometimes severe consequences. HN5[⬆] An unmet jurisdictional precondition deprives courts of power to hear the case, thus requiring immediate dismissal. *Hamer v. Neighborhood Housing Servs. of Chicago, 583 U. S. 17, ___- ___, 138 S. Ct. 13, 199 L. Ed. 2d 249 (2017) (slip op., at 2-3)*. And jurisdictional rules are impervious to excuses like waiver or forfeiture. *Boechler v. Commissioner, 596 U. S. ___, ___, 142 S. Ct. 1493, 212 L. Ed. 2d 524 (2022) (slip op., at 3)*). Courts must also raise and enforce them *sua sponte*. *Fort Bend County, 587 U. S., at ___, 139 S. Ct. 1843, 204 L. Ed. 2d 116 (slip op., at 7)*).

This case exemplifies why the distinction between nonjurisdictional and jurisdictional preconditions matters. In light of Transform's belated invocation of §363(m), the District Court stated that, "if ever there were an appropriate situation for the application of judicial estoppel, this would be it." *Sears II, 616 B. R., at 627*. But not even such **[*16]** egregious conduct by a litigant could permit the application of judicial estoppel as against a jurisdictional rule.

In view of these consequences and our past sometimes-loose use of the word "jurisdiction," we have endeavored "to bring some discipline" to this area. *Henderson, 562 U. S., at 435, 131 S. Ct. 1197, 179 L. Ed. 2d 159*. HN6[⬆] We have clarified that jurisdictional rules pertain to "'"the power of the court rather than to the rights or obligations of the parties."'" ***Reed Elsevier, 559 U. S., at 161, 130 S. Ct. 1237, 176 L. Ed. 2d 18***. And we only treat a provision as jurisdictional if Congress "'clearly states'" as much. *Boechler, 596 U. S., at ___, 142 S. Ct. 1493, 1497, 212 L. Ed. 2d 524*).

This clear-statement rule implements "Congress' likely intent" regarding whether *non*compliance with a precondition "governs a court's adjudicatory capacity." *Henderson, 562*

*U. S., at 435-436, 131 S. Ct. 1197, 179 L. Ed. 2d 159*. We have reasoned that Congress ordinarily enacts preconditions to facilitate the fair and orderly disposition of litigation and would not heedlessly give those same rules an unusual character that threatens to upend that orderly progress. *Wilkins v. United States, 598 U. S. ___, ___ - ___, 143 S. Ct. 870, 215 L. Ed. 2d 116 (2023) (slip op., at 3-4)*; *Hamer, 583 U. S., at ___, 138 S. Ct. 13, 199 L. Ed. 2d 249 (slip op., at 3)* (jurisdictional character is an exception "to the ordinary operation of our adversarial system"); *Fort Bend County, 587 U. S., at ___, 139 S. Ct. 1843, 204 L. Ed. 2d 116 (slip op., at 7)* (noting the sometimes "'[h]arsh'" consequences of enforcement of jurisdictional rules, including waste of judicial resources and unfairness to the litigants).

That said, Congress need not use "'magic **[\*17]** words'" to convey its intent that a statutory precondition be treated as jurisdictional. *Boechler, 596 U. S., at ___, 142 S. Ct. 1493, 1497, 212 L. Ed. 2d 524*. "'[T]raditional tools of statutory construction'" can reveal a clear statement. *Ibid.* But the statement must indeed be clear; it is insufficient that a jurisdictional reading is "plausible," or even "better," than nonjurisdictional alternatives. *Id., at ___, 142 S. Ct. 1493, 212 L. Ed. 2d 524 (slip op., at 6)*.

B

**HN7[⬆]** We see nothing in *§363(m)*'s limits that purports to "gover[n] a court's

adjudicatory capacity." *Henderson, 562 U. S., at 435, 131 S. Ct. 1197, 179 L. Ed. 2d 159*.

**HN8[⬆]** Start with the text. Far from addressing "'a court's authority,'" or "'refer[ring] in any way to the jurisdiction of the district courts,'" *Fort Bend County, 587 U. S., at ___, 139 S. Ct. 1843, 1851, 204 L. Ed. 2d 116*, *§363(m)* takes as a given the exercise of judicial power over any authorization under *§363(b)* or *§363(c)* (hereinafter called "covered authorizations"). Indeed, *§363(m)* plainly contemplates that appellate courts might "revers[e] or modif[y]" *any* covered authorization, with a proviso: Sometimes, the court's exercise of power may not accomplish all the appellant wishes, because the reversal or modification of a covered authorization may not "affect the validity of a sale or lease under such authorization" to a good-faith purchaser or lessee under certain prescribed circumstances. *§363(m)*. Thus, the provision consists of a caveated **[\*18]** constraint on the effect of a reversal or modification. And the caveat is itself caveated; *§363(m)*'s constraints are simply inapplicable where the sale or lease was made to a bad-faith purchaser or lessee, or if the sale or lease is stayed pending appeal, or (for that matter) if the court does something other than "revers[e] or modif[y]" the authorization. *Ibid.*

This is not the stuff of which clear statements are made. Indeed, we treated similar statutory traits as

Athanasios Agelakopoulos

"significan[t]" evidence of *non*jurisdictional status in *Reed Elsevier, 559 U. S., at 165, 130 S. Ct. 1237, 176 L. Ed. 2d 18*. In *Reed Elsevier*, this Court considered a Copyright Act provision that, "with certain exceptions," required copyright-infringement plaintiffs to show, as a condition to suit, that the work at issue had been registered. *Id., at 157-158, 130 S. Ct. 1237, 176 L. Ed. 2d 18*. We found that the provision was nonjurisdictional, and thought it key that the provision expressly envisioned courts adjudicating some claims even absent registration, *id., at 165, 130 S. Ct. 1237, 176 L. Ed. 2d 18*, since it would have been "at least unusual to ascribe jurisdictional significance to a condition subject to these sorts of exceptions," *ibid.*

Similarly, given *§363(m)*'s clear expectation that courts will exercise jurisdiction over a covered authorization, it is surely permissible to read its text as merely **[*19]** cloaking certain good-faith purchasers or lessees with a targeted protection of their newly acquired property interest, applicable even when an appellate court properly exercises jurisdiction. See *Scarborough v. Principi, 541 U. S. 401, 414, 124 S. Ct. 1856, 158 L. Ed. 2d 674 (2004)* (statutory provision was not jurisdictional, for it did not speak to the "'classes of cases'" the court was "competent to adjudicate" but to "proceedings auxiliary to cases already within that court's adjudicatory

authority"). *HN9*[⬆] In other words, *§363(m)* reads like a "statutory limitation," *Arbaugh, 546 U. S., at 516, 126 S. Ct. 1235, 163 L. Ed. 2d 1097*, that is tied in some instances to the need for a party to take "certain procedural steps at certain specified times" (here, seeking a stay), *Henderson, 562 U. S., at 435, 131 S. Ct. 1197, 179 L. Ed. 2d 159*. And we certainly cannot say that *§363(m)*'s "jurisdictional nature" is "clear *ex visceribus verborum*," as we once did of a statutory provision directing that "'[n]o court shall have jurisdiction over [a covered] action,'" *Rockwell Int'l Corp. v. United States, 549 U. S. 457, 467-468, 127 S. Ct. 1397, 167 L. Ed. 2d 190 (2007)*.

Statutory context further clinches the case. *HN10*[⬆] Congress separated *§363(m)* from the Code provisions that recognize federal courts' jurisdiction over bankruptcy matters. See *28 U. S. C. §§1334(a)-(b)*, *(e)*, *157*, *158*; see also *Arbaugh, 546 U. S., at 515, 126 S. Ct. 1235, 163 L. Ed. 2d 1097* (emphasizing separation as evidence of nonjurisdictional status). [5] And *§363(m)* does not contain any "clear tie" to the Code's plainly jurisdictional provisions. *Boechler, 596 U. S., at ___, 142 S. Ct. 1493, 212 L. Ed. 2d 524 (slip op., at 6)*. Nor does the Code lack **[*20]** for examples of such ties: Consider *11 U. S. C. §305(c)*, which directs that certain judicial orders are "not reviewable by appeal or otherwise by the court of

---

[5] *HN11*[⬆] *Section 1334* grants bankruptcy jurisdiction to the district courts in the first instance, and those courts may "refe[r]"

such jurisdiction to bankruptcy courts under prescribed circumstances. *Wellness Int'l Network, Ltd. v. Sharif, 575 U. S. 665, 670-671, 135 S. Ct. 1932, 191 L. Ed. 2d 911 (2015)*.

appeals" under §158(d) (the Code provision that recognizes the courts of appeals' jurisdiction in bankruptcy matters). [6]

It also does not suffice that §363(m) issues directions, as Transform occasionally intimates. HN12[↑] We routinely hold that congressional commands are nonjurisdictional despite emphatic directives. [7] Transform seems to ignore the possibility that §363(m)'s particular "statutory limitation[s]," Arbaugh, 546 U. S., at 516, 126 S. Ct. 1235, 163 L. Ed. 2d 1097, could be "important" directives and yet not jurisdictional, Henderson, 562 U. S., at 435, 131 S. Ct. 1197, 179 L. Ed. 2d 159. But it is hardly clear to us that §363(m)'s commands do anything more than that.

C

Transform offers two creative retorts, neither of which excavates a clear statement from §363(m)'s unassuming text.

1

Transform insists that §363(b) sales of estate assets must proceed under a court's in rem jurisdiction, and that courts can only exercise in rem jurisdiction with respect to a res (including interests like

the leasehold here) over which they have actual or constructive control. Brief for Respondent 2, 39-40, 42. Appealing to "traditional principles of in rem jurisdiction," Transform reasons that the transfer of a res to a good-faith [*21] purchaser removes it from the bankruptcy estate, and so from the court's in rem jurisdiction over the estate. Id., at 24, 39-40. And it thus concludes that §363(m) is jurisdictional, because it operates to ensure that (absent a stay) courts cannot disturb a transfer to a good-faith purchaser, thereby "confirm[ing]" the traditional in rem truth that "the bankruptcy court cannot reach the res, and thus has no basis for the exercise of in rem jurisdiction over it." Id., at 39-40.

This argument teeters on a contorted framing of contested general background principles rather than §363(m)'s text and context (which, as we have said, lack any clear jurisdictional hue). Moreover, even setting aside MOAC's credible retort that traditional in rem jurisdiction did not necessarily cease when the res left a court's custody, Reply Brief 6-9, Transform's contentions about §363(m)'s relationship to traditional in rem jurisdiction merely offer a reason to think Congress intended

---

[6] To be clear, we do not hold here that 11 U. S. C. §305(c) is jurisdictional. The point is only that, as jurisdictional cross-references go, §363(m) is not the Code's clearest case.

[7] See, e.g., Musacchio v. United States, 577 U. S. 237, 246, 136 S. Ct. 709, 193 L. Ed. 2d 639 (2016) (a federal criminal statute commanding that "'no person shall be prosecuted, tried, or punished for any offense'" unless the charging document is filed within five years of the offense); United States v. Kwai Fun

Wong, 575 U. S. 402, 416-417, 420, 135 S. Ct. 1625, 191 L. Ed. 2d 533 (2015) (multiple provisions stating that a claim "'shall be forever barred'"); Reed Elsevier, Inc. v. Muchnick, 559 U. S. 154, 157-158, 130 S. Ct. 1237, 176 L. Ed. 2d 18 (2010) (the Copyright Act's mandate that "'no civil action . . . shall be instituted until preregistration or registration of the copyright claim has been made'"); see also Fort Bend County v. Davis, 587 U. S. ___, ___ - ___, 139 S. Ct. 1843, 204 L. Ed. 2d 116 (2019) (slip op., at 7-8) (collecting further cases).

§363(m) to be jurisdictional. That, without more, is not enough. See *Boechler, 596 U. S., at ___, 142 S. Ct. 1493, 212 L. Ed. 2d 524 (slip op., at 6*). Transform does not (because it cannot) deny the paucity of textual or contextual clues indicating a clear statement of jurisdictional intent. See Part III-B, *supra*. And whatever else one might say about Transform's clear-statement **[*22]** case, it certainly has not shown that §363(m)'s supposed alignment with allegedly pre-existing jurisdictional truths is so powerful that it nullifies these otherwise compelling nonjurisdictional inferences.

*Section* §363(m)'s operation further derails this bankshot argument. Transform's assertion is that §363(m) is jurisdictional because it "confirms" a traditional truth that bankruptcy courts exercising *in rem* jurisdiction cannot touch a res that is transferred out of the estate. Brief for Respondent 39. But that sits uncomfortably with §363(m)'s express contemplation that courts *can* touch—and affect the validity of—certain sales or leases (*e.g.*, those made to bad-faith purchasers) due to reversals or modifications of covered authorizations even though the property concerned has left the estate. Consequently, even if §363(m) mirrors traditional *in rem* jurisdiction, it does not seem to reflect what Transform wishes to see.

What is more, to the extent that a lower court can act with respect to the res at all, surely it can only do so while exercising congressionally conferred jurisdiction. *Celotex Corp. v. Edwards, 514 U. S. 300, 307, 115 S. Ct. 1493, 131 L. Ed. 2d 403 (1995)*. Applied here, that principle puts Transform on the horns of a dilemma. **HN13[⬆]** If a court, consistent with §363(m), issues a judgment affecting a consummated **[*23]** sale's validity that draws on any *in rem* jurisdiction the Code confers in §1334, that conferral authorizes the exercise of *in rem* power with respect to a res that has left the estate. *Section 363(m)* could hardly "confirm" a supposed traditional truth that its concept of jurisdiction rejects. But if that hypothetical judgment draws on a *non-in rem* source of jurisdiction, then §363(m)'s power source is even further disconnected from Transform's contested claims about traditional *in rem* jurisdiction. [8] Either way, §363(m) tells a jurisdictional tale inconsistent with the one Transform needs.

In the end, then, Transform's claims about traditional *in rem* jurisdiction are red herrings. **HN15[⬆]** *Section 363(m)* is what matters, and Congress has not clearly stated that the provision is a limit on judicial power, rather than a mere restriction on the effects of a valid exercise of that power when a party successfully appeals a covered authorization.

---

[8] **HN14[⬆]**] This alternative is not fanciful; bankruptcy-court jurisdiction is not purely *in rem*. *Central Va. Community College v. Katz, 546 U. S. 356, 362, 369-372, 378, 126 S. Ct. 990, 163 L. Ed. 2d 945 (2006); Celotex Corp. v. Edwards, 514 U. S. 300, 308, 115 S. Ct. 1493, 131 L. Ed. 2d 403 (1995)* (discussing *§1334's* "'comprehensive'" jurisdictional grants).

2

Transform's second major salvo fares no better. It points to former Federal Rule of Bankruptcy Procedure 805, which was promulgated in 1976, [9] and characterizes that Rule as "'declaratory of '" a historic practice in which some appellate courts dismissed appeals "challenging the validity of a consummated sale . . . without considering the **[*24]** merits," which Transform equates with jurisdictional treatment. Brief for Respondent 43-44. Transform vigorously maintains that Congress fully transplanted Rule 805 into *§363(m)*, and that *§363(m)* therefore imbibed the jurisdictional character that Rule 805 incorporated from the historic practice.

This argument relies on a supposed pre-1976 lower court jurisdictional consensus that Rule 805 formalized and Congress then built into *§363(m)*. But Transform trips over the first hurdle: Rule 805's supposedly jurisdictional character. We rejected this sort of use of old lower court cases in *Boechler*, because "almost all" of those lower court cases "predate[d] this Court's effort to 'bring some discipline' to the use of the term 'jurisdictional.'" *596 U. S., at ___-___, 142 S. Ct. 1493, 1500, 212 L. Ed. 2d 524*. The facts here are even worse for Transform: *Every* case it cites to

prove that Rule 805 was jurisdictional predates *§363(m)*'s initial 1978 enactment, and thus long predates our modern efforts on jurisdictional nomenclature. If numerous recent lower court opinions (some as recent as 2005) treating the provision at issue as jurisdictional were not enough in *Reed Elsevier, 559 U. S., at 160, n. 2, 169, 130 S. Ct. 1237, 176 L. Ed. 2d 18*, Transform's weaker proffer will not do.

\*\*\*

Nothing in Transform's creative arguments in this case persuades us that *§363(m)* is jurisdictional under our clear-statement **[*25]** precedents. Because the Second Circuit's judgment rested on the mistaken belief that *§363(m)* is jurisdictional, we vacate that judgment and remand the case for further proceedings consistent with this opinion. [10]

*It is so ordered.*

---

**End of Document**

---

[9] The Rule provided: "Unless an order approving a sale of property or issuance of a certificate of indebtedness is stayed pending appeal, the sale to a good faith purchaser or the issuance of a certificate to a good faith holder shall not be affected by the reversal or modification of such order on appeal, whether or not the purchaser or holder knows of the pendency

of the appeal." Fed. Rule Bkrtcy. Proc. 805 (1976).

[10] The parties contest other questions bearing on *§363(m)*'s meaning and scope. Compare Brief for Respondent 33-37, with Brief for United States as *Amicus Curiae* 28-32, and Reply Brief 21-24. Because we need not answer those questions to resolve the question presented, we do not.