

**Samuel A. Schwartz, Esq.**
office: 702.385.5544
fax: 702.442.9887
601 E. Bridger Avenue
Las Vegas, NV 89101

April 28, 2023

Lyle W. Cayce
Clerk of the Court
United States Court of Appeals
For the Fifth Circuit
F. Edward Hebert Building
600 S. Maestri Place
New Orleans, LA 70130

Re: *NexPoint Advisors, L.P. v. Pachulski Stang Ziehl & Jones, LLP, et al.,* **Case No. 22-10575;**
<u>**Notice of Supplemental Authorities under FRAP 28(j)**</u>

Dear Sir:

      Under Federal Rule of Appellate Procedure 28(j), and as counsel to the Appellant, I write to alert the Court to the recent decision of the United States Court of Appeals for the Sixth Circuit in *Litton Loan Servicing, L.P. v. Schubert (In re Schubert)*, 2023 U.S. App. LEXIS 7432 (6th Cir. Mar. 28, 2023) ("**Schubert**"), attached as <u>Exhibit 1</u>, decided after the close of briefing.

      Initially, *Schubert* characterizes the "person aggrieved" test in jurisdictional terms. *See id.* at *5. This immediately subjects the "person aggrieved" test to the "clear-statement rule" announced in the recent decision of the Supreme Court of the United States in *MOAC Mall Holdings LLC v. Transform Holdco LLC*, ___U.S.___, 2023 U.S. LEXIS 1666, *16 (Apr. 19, 2023) ("**MOAC**") – which, itself, is the subject of a concurrently filed request for supplemental briefing under 5th Cir. R. 28.4. Both Appellant's Opening and Reply Briefs cite and rely upon the Supreme Court's decision in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) ("**Lexmark**") for the argument that the continued application of the person-aggrieved test for appellate standing impermissibly limits a cause of action created by Congress in service of prudential concerns. *See Opening Brief* at pgs. 65-66; *see also Reply Brief* at pgs. 4-6. "And after the 1978 amendment, [28 U.S.C. § 158] contains no clear language indicating that it contains a jurisdictional limit akin to the person-aggrieved test…Thus, the 1978 amendment almost certainly eliminated the person-aggrieved test as a jurisdictional limit on bankruptcy appeals." *Schubert*, 2023 U.S. App. LEXIS 7432 at **6-7.

Sincerely,

/s/ *Samuel A. Schwartz*

Samuel A. Schwartz, Esq.

# EXHIBIT 1


Neutral
As of: April 28, 2023 10:21 PM Z

# [Litton Loan Servicing, L.P. v. Schubert (In re Schubert)](#)

United States Court of Appeals for the Sixth Circuit

March 28, 2023, Filed

File Name: 23a0144n.06

Case Nos. 21-3969/3983

**Reporter**
2023 U.S. App. LEXIS 7432 *; 2023 FED App. 0144N (6th Cir.); 2023 WL 2663257

IN RE: DENNIS SCHUBERT; SUE SCHUBERT, Debtors.LITTON LOAN SERVICING, L.P., JPMORGAN CHASE BANK, N.A., and OCWEN FINANCIAL CORPORATION, Plaintiffs-Appellants/Cross-Appellees. v. DENNIS SCHUBERT; SUE SCHUBERT, Defendants-Appellees/Cross-Appellants.

**Notice:** CONSULT *6TH CIR. R. 32.1* FOR CITATION OF UNPUBLISHED OPINIONS AND DECISIONS.

**Prior History:** [*1] ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO.

[Litton Loan Servicing, L.P. v. Schubert, 631 B.R. 868, 2021 U.S. Dist. LEXIS 181054, 2021 WL 4304280 (N.D. Ohio, Sept. 22, 2021)](#)

**Core Terms**

lenders, person-aggrieved, abandonment, zone-of-interests, bankruptcy court, courts, parties, decisions, appeals, aggrieved person, bankrupt estate, zone, prudential, abrogate, belonged, bankruptcy proceedings, adversary proceedings, protected interest

**Case Summary**

**Overview**

HOLDINGS: [1]-In a case where lenders appealed a bankruptcy court order directing debtors' bankruptcy estate to abandon a breach-of-contract claim, the appeal was dismissed because the lenders did not ask the court to abrogate the person-aggrieved test under [28 U.S.C.S. § 158](#) that barred their appeal, where the lenders simply replied that they met the person-aggrieved test.

**Outcome**
Appeal dismissed; order affirmed.

**LexisNexis® Headnotes**

Bankruptcy Law > Procedural Matters > Judicial Review > Bankruptcy Appeals Procedures

*HN1*[⬇]  **Judicial Review, Bankruptcy Appeals Procedures**

On appeal, the appellate court reviews the bankruptcy court's order directly, considering all legal questions anew.

Civil Procedure > ... > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions

Governments > Courts > Authority to Adjudicate

*HN2*[⬇]  **Subject Matter Jurisdiction, Jurisdiction Over Actions**

A party may challenge a court's subject-matter jurisdiction at any time.

Civil Procedure > ... > Justiciability > Standing > Injury in Fact

Constitutional Law > ... > Case or Controversy > Standing > Elements

*HN3*[⬇]  **Standing, Injury in Fact**

Standing exists so long as a party suffered an injury in fact fairly traceable to the defendant's conduct and likely redressable by a favorable decision.

Civil Procedure > ... > Justiciability > Standing > Personal Stake

*HN4*[⬇]  **Standing, Personal Stake**

The person-aggrieved test bars parties from appealing a bankruptcy-court order absent a direct financial stake in the appeal's outcome, and the appellate court's precedent characterizes that test as jurisdictional.

Civil Procedure > ... > Subject Matter Jurisdiction > Jurisdiction Over Actions > Limited Jurisdiction

Governments > Courts > Authority to Adjudicate

*HN5*[⬇]  **Jurisdiction Over Actions, Limited Jurisdiction**

A court may not limit its jurisdiction for prudential or policy reasons. Congress, not the courts, confers the right to sue. And that principle comes with a corollary: when Congress creates a right to sue consistent with the Constitution, a court may not take it away.

Civil Procedure > ... > Subject Matter Jurisdiction > Jurisdiction Over Actions > Limited Jurisdiction

Governments > Legislation > Interpretation

*HN6*[⬇]  **Jurisdiction Over Actions,**

**Limited Jurisdiction**

A statutory provision only limits jurisdiction if it contains clear language saying that it does.

> Civil Procedure > Judicial Officers > Judges > Duty of Judge to Sit

> Civil Procedure > ... > Subject Matter Jurisdiction > Jurisdiction Over Actions > Limited Jurisdiction

HN7[⤓]  **Judges, Duty of Judge to Sit**

Courts may not limit their jurisdiction for prudential reasons, since courts have a virtually unflagging duty to exercise the jurisdiction that Congress has granted them.

> Civil Procedure > ... > Justiciability > Standing > Personal Stake

> Governments > Legislation > Interpretation

HN8[⤓]  **Standing, Personal Stake**

The zone-of-interests inquiry is guided by the traditional tools of statutory interpretation. If the person-aggrieved test has a statutory basis, it must be retained, and the statutory language determines its scope and effect. If not, it must be abrogated.

> Civil Procedure > Appeals > Reviewability of Lower Court Decisions > Preservation for Review

HN9[⤓]  **Reviewability of Lower Court Decisions, Preservation for Review**

Parties can forfeit issues, and the appellate court routinely holds them to their forfeitures.

> Civil Procedure > Appeals > Reviewability of Lower Court Decisions > Adverse Determinations

> Civil Procedure > ... > Justiciability > Standing > Personal Stake

HN10[⤓]  **Reviewability of Lower Court Decisions, Adverse Determinations**

The person-aggrieved test bars appeals by parties who lack a direct financial stake in the appeal's outcome.

> Bankruptcy Law > Procedural Matters > Jurisdiction > Core Proceedings

HN11[⤓]  **Jurisdiction, Core Proceedings**

The Bankruptcy Code grants bankruptcy courts jurisdiction over core proceedings, including all matters concerning the administration of the bankruptcy estate. *28 U.S.C.S. § 157(b)(2)(A)*. Determining which claims

belong to the estate certainly counts as part of administering the estate.

Civil Procedure > ... > Justiciability > Standing > Personal Stake

HN12[⬇] **Standing, Personal Stake**

The party-in-interest test is not stringent. Parties in interest range from those with a direct financial or practical stake in the litigation to those who will be impacted in any significant way.

**Counsel:** For LITTON LOAN SERVICING, L.P., OCWEN FINANCIAL CORPORATION, Plaintiffs - Appellants Cross-Appellees (21-3969, 21-3983): Rudy J. Cerone, McGlinchey Stafford, New Orleans, LA; Stefanie Deka, James W. Sandy, McGlinchey Stafford, Cleveland, OH.

For JPMORGAN CHASE BANK, N.A., Plaintiff - Appellant Cross-Appellee (21-3969, 21-3983): Nelson Marlin Reid, Bricker & Eckler, Columbus, OH.

For DENNIS SCHUBERT, Defendant - Appellee Cross-Appellant (21-3969, 21-3983): Kenneth P. Frankel, Smith & Smith, Avon Lake, OH.

For SEAN SCHUBERT, Administrator of the Estate of Sue Jo Schubert, Defendant - Appellee Cross-Appellant (21-3969, 21-3983): Kenneth P. Frankel, Smith & Smith, Avon Lake, OH.

**Judges:** Before: MOORE, THAPAR, and LARSEN, Circuit Judges. THAPAR, J., delivered the opinion of the court in which LARSEN, J., joined. MOORE, J. (pp. 9-17), delivered a separate opinion concurring in the judgment.

**Opinion by:** THAPAR

**Opinion**

THAPAR, Circuit Judge. Three companies—Litton, JPMorgan, and Ocwen—appeal a bankruptcy court order directing Dennis and Sue Schubert's bankruptcy estate to abandon a breach-of-contract claim. The Schuberts cross-appeal **[*2]** an order denying their motion to dismiss a related adversary proceeding. Because the companies do not ask us to abrogate a doctrine that bars their appeal, their appeal is dismissed. The order denying dismissal of the adversary proceeding is affirmed.

I.

As Dennis and Sue Schubert tell it, Litton Loan Servicing, L.P., JPMorgan Chase Bank, N.A., and Ocwen Financial Corporation (collectively, "the lenders") breached the Schuberts' mortgage agreement between 2000 and 2004 by collecting more late fees from them than allowed. But since the alleged breach occurred while the Schuberts were in bankruptcy, the breach-of-contract claim belonged to the Schuberts' bankruptcy estate. *See* 11 U.S.C. §§ 521, 541(a), 554(c)-(d). And at the time, neither the Schuberts nor the lenders noted the claim in their bankruptcy filings. So when

the Schuberts left bankruptcy in 2006, the bankruptcy court didn't know about the claim, and that meant the court didn't release it. Instead, the claim remained in the estate.

Nearly a decade later, the Schuberts say they discovered the overcharges in the midst of a foreclosure proceeding. They then filed the breach-of-contract claim against Chase, Litton, and Ocwen in Ohio court. The lenders defended [*3] by arguing that the claim belonged to the bankruptcy estate and so was under the control of a bankruptcy trustee, not the Schuberts. See 11 U.S.C. § 541(a). To prevail, the Schuberts needed the trustee to abandon the claim.

To do this, the Schuberts stayed the Ohio action (which remains pending) and reopened their old case in bankruptcy court. There, they sought an order directing the trustee to relinquish—in bankruptcy parlance, to "abandon"—the claim. See 11 U.S.C. § 554(b). That way, the Ohio suit could go on.

The lenders opposed the abandonment motion. To stop the Schuberts, they also filed a case of their own in bankruptcy court, known as an "adversary proceeding." In it, they sought an order declaring that the claim belonged to the estate, as well as an injunction barring the Schuberts from pursuing their Ohio suit. The Schuberts moved to dismiss.

At a combined hearing, the bankruptcy court denied the Schuberts' dismissal motion and ruled that the claim belonged to the estate. However, it then abstained from issuing an injunction and instead ordered the trustee to abandon the Schuberts' mortgage claim. The parties cross-appealed, and the district court affirmed.

The parties now cross-appeal again. The lenders appeal [*4] the bankruptcy court's abandonment order, and the Schuberts appeal the denial of their motion to dismiss.

HN1[] On appeal, we review the bankruptcy court's order directly, considering all legal questions anew. In re Conti, 982 F.3d 445, 448 (6th Cir. 2020).

II.

The lenders' appeal fails at the threshold. While they have standing, another doctrine, the person-aggrieved test, blocks the lenders' way. There is good reason to think the person-aggrieved test is no longer good law, but the lenders do not ask us to abrogate it. Instead, they simply argue that they meet it. And under existing precedent, they don't.

A.

First, standing. The Schuberts say the lenders lack standing to participate in this litigation. Although the lenders argue that the Schuberts didn't raise this issue soon enough, HN2[] a party may challenge a court's subject-matter jurisdiction at any time. See Kontrick v. Ryan, 540 U.S. 443, 455, 124 S. Ct. 906, 157 L. Ed. 2d 867 (2004). Even so, the challenge fails. HN3[] Standing exists

so long as a party suffered an injury in fact fairly traceable to the defendant's conduct and likely redressable by a favorable decision. *Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)*. The lenders clear this bar. The threat of certainly impending litigation can satisfy the injury requirement. *See MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 126-30, 134, 127 S. Ct. 764, 166 L. Ed. 2d 604 (2007)*. And here, litigation isn't just *im*pending, it's already pending— and it's plainly **[*5]** traceable to the Schuberts. The Schuberts have filed their claim against the lenders in Ohio court. All they need is the bankruptcy court's approval to proceed. That certainly gives the lenders a concrete interest in the bankruptcy proceedings. And these proceedings can also give the lenders redress. An order consigning the claim to the bankruptcy estate would halt the Ohio lawsuit in its tracks.[1] That's enough to establish standing.

B.

Next, the Schuberts argue that the person-aggrieved test bars the lenders' appeal. Rather than say that the test should be abrogated, the lenders simply reply that they meet it. Since the lenders don't, their appeal is dismissed.

*HN4*[⬆] The person-aggrieved test bars parties from appealing a bankruptcy-court order absent a direct financial stake in the appeal's outcome, and our precedent characterizes that test as jurisdictional. *In re Cap. Contracting Co., 924 F.3d 890, 894-97 (6th Cir. 2019)*. As Judge Murphy has explained in a thoughtful opinion, there is good reason to believe this test is no longer good law. *Id. HN5*[⬆] Since the Sixth Circuit last applied this test, the Supreme Court has clarified that a court may not limit its jurisdiction for prudential or policy reasons. *See Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 125-27, 134 S. Ct. 1377, 188 L. Ed. 2d 392 (2014)*. Congress, not the courts, confers the right to **[*6]** sue. *See Alexander v. Sandoval, 532 U.S. 275, 286-87, 121 S. Ct. 1511, 149 L. Ed. 2d 517 (2001)*. And that principle comes with a corollary: when Congress creates a right to sue consistent with the Constitution, a court may not take it away.

That basic rule likely dooms the person-aggrieved test as a jurisdictional bar. The person-aggrieved test's roots trace to the Bankruptcy Act of 1898. That Act granted circuit courts jurisdiction over bankruptcy appeals filed by "any party aggrieved." *Bankruptcy Act of 1898, ch. 541, § 24(b), 30 Stat. 544, 553*. Courts interpreted this language as a

---

[1] The Schuberts also argue that reopening their bankruptcy case has eliminated the preclusive effect of the case's earlier rulings, thereby eliminating standing. This argument appears to be a non-sequitur. The lenders' theory of standing does not rely on preclusion alone. The bankruptcy court could still rule for the lenders on other grounds—for example, by applying estoppel or finding against the Schuberts on the merits of their abandonment motion. And even if the lenders did rely on preclusion for relief, whether reopening the bankruptcy case eliminates the preclusive effect of the bankruptcy proceeding's prior orders seems to go to the merits of the parties' dispute, not to whether a case or controversy exists.

jurisdictional limit, restricting appeals to only those parties with a direct financial stake in the outcome. *In re Cap. Contracting Co., 924 F.3d at 895-96*. In other words, the Code permitted a party in a bankruptcy proceeding to appeal only if the appeal's result would put money in the party's pocket or compel it to write a check.

In 1978, though, Congress removed the "any person aggrieved" language from the Bankruptcy Code. *Id. at 895-97*. Now, Section 158 contains no language limiting who may appeal. *See 28 U.S.C. § 158*. Nor does the provision governing abandonment. *See 11 U.S.C. § 554*. In other words, Congress eliminated the person-aggrieved test's statutory foundation.

HN6[⬆] A statutory provision only limits jurisdiction if it contains clear language saying that it does. *See Arbaugh v. Y&H Corp., 546 U.S. 500, 515-16, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006)*. And after the 1978 amendment, Section 158 contains no clear language indicating that it contains a jurisdictional **[*7]** limit akin to the person-aggrieved test. HN7[⬆] Nor may courts limit their jurisdiction for prudential reasons, since courts have a "virtually unflagging" duty to exercise the jurisdiction that Congress has granted them. *Lexmark, 572 U.S. at 126* (citation omitted). Thus, the 1978 amendment almost certainly eliminated the person-aggrieved test as a jurisdictional limit on bankruptcy appeals. Two other circuits have reached the same conclusion. *See In re Ernie Haire Ford, Inc., 764 F.3d 1321, 1325 n.3 (11th Cir. 2014)*; *In re Petrone, 754 F. App'x 590, 591 (9th Cir. 2019)*.

But that doesn't end our inquiry. Some courts have suggested that the substance of the person-aggrieved test might live on as a zone-of-interest test. *See Ernie Haire Ford, 764 F.3d at 1325 n. 3*; *Petrone, 754 F. App'x at 591*. HN8[⬆] The zone-of-interests inquiry is guided by the "traditional tools of statutory interpretation." *Lexmark, 572 U.S. at 127*. If the person-aggrieved test has a statutory basis, it must be retained, and the statutory language determines its scope and effect. If not, it must be abrogated.

The parties haven't briefed this issue. Why? Because the lenders haven't asked us to abrogate the person-aggrieved test. While the lenders note that whether the person-aggrieved test "is still viable . . . is an unresolved question," they stop short of challenging it. Reply Br. 23-24. Instead, they say that we "need not resolve that issue." *Id.* at 24. And **[*8]** because they have not asked us to abrogate the test, the Schuberts have had no opportunity to explain what, if anything, might replace it. It may well be that the 1978 amendment ended the test for good. Or some other statutory basis may require imposing a new zone-of-interest test in its place. Either way, the question has not been presented, and we have no briefing on the issue.

HN9[⬆] Parties can forfeit issues, and we

routinely hold them to their forfeitures. *See, e.g.,* In re Isaacs, 895 F.3d 904, 917 (6th Cir. 2018); *see also* Bannister v. Knox Cnty. Bd. of Educ., 49 F.4th 1000, 1012 (6th Cir. 2022). Since the lenders forfeited any challenge to the doctrine, we need not decide whether the person-aggrieved test is still good law or even whether it's jurisdictional. Instead, all we need to do is consider the lenders' argument that they survive the test under our existing precedent. They do not. HN10[⬆] The person-aggrieved test bars appeals by parties who lack a direct financial stake in the appeal's outcome. In re Cap. Contracting Co., 924 F.3d at 895-96. And under our precedent, staving off the threat of litigation doesn't count. In re LTV Steel Co., Inc., 560 F.3d 449, 452-53 (6th Cir. 2009). Since that's the lenders' only interest in this appeal, they do not count as persons aggrieved.

Because the parties have not asked us to abrogate the test—and given that the lenders fail it—the appeal is dismissed.[2]

III.

Finally, the **[*9]** Schuberts appeal the order denying dismissal of the lenders' adversary proceeding. First, they argue the proceeding should have been dismissed for lack of standing. But as we have explained, the lenders have standing. *See supra*, at 3-4. Next, the Schuberts argue the bankruptcy court lacks jurisdiction to determine which claims belong to the estate. HN11[⬆] But the Bankruptcy Code grants bankruptcy courts jurisdiction over core proceedings, including all matters concerning the administration of the bankruptcy estate. *See* 28 U.S.C. § 157(b)(2)(A). Determining which claims belong to the estate certainly counts as part of administering the estate. So that's no ground for dismissal either.

The Schuberts lastly argue that the lenders do not satisfy the Bankruptcy Code's party-in-interest test. That argument too is a non-starter. HN12[⬆] The party-in-interest test is not stringent. Parties in interest range from those with a direct financial or practical stake in the litigation to those who "will be impacted in any significant way." In re Felix, 825 F. App'x 365, 367 (6th Cir. 2020) (citation omitted). The lenders comfortably fit this description. Chase's predecessor (who merged with Chase) participated in and was bound by the original bankruptcy proceedings. Litton also participated **[*10]** in the bankruptcy proceeding. And Ocwen owns Litton. Therefore, all three lenders have a practical stake in maintaining the settlement of claims the bankruptcy produced. Had the Schuberts disclosed the breach-of-contract claim during their bankruptcy, the lenders could have tried to settle it through the bankruptcy

---

[2] Despite the forfeiture and lack of briefing, the concurrence would decide that the person-aggrieved test survives anyway. One problem: nowhere does the concurrence grapple with Congress's repeal of the "any party aggrieved" language from the Bankruptcy Code. Since statutory text guides the zone-of-interest analysis, any future panel considering whether a zone-of-interest test applies to bankruptcy appeals should address the implications of this repeal. Lexmark, 572 U.S. at 127.

process. Instead, the lenders left the proceedings believing that no claims remained. Thus, they qualify as parties in interest. Accordingly, the bankruptcy court did not err in denying the Schuberts' motion.

* * *

The lenders' appeal is dismissed, and the order denying dismissal of the adversary proceeding is affirmed.

**Concur by:** KAREN NELSON MOORE

**Concur**

**KAREN NELSON MOORE, Circuit Judge, concurring in the judgment**. I agree that the person-aggrieved standard forecloses the lenders' appeal. I write separately, however, to explain why I believe that the person-aggrieved standard reflects a zone-of-interests analysis that is consistent with Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 134 S. Ct. 1377, 188 L. Ed. 2d 392 (2014).

**I.**

For decades, we have held that only a "person aggrieved" by a bankruptcy court order may appeal that order. See, e.g., Brown v. Ellmann (In re Brown), 851 F.3d 619, 623 (6th Cir. 2017); Moran v. LTV Steel Co. (In re LTV Steel Co.), 560 F.3d 449, 452 (6th Cir. 2009); Fid. Bank, Nat'l Ass'n v. M.M. Grp., Inc., 77 F.3d 880, 882 (6th Cir. 1996); Gen. Elec. Credit Corp. v. L.T. Ruth Coal Co. (In re L.T. Ruth Coal Co.), No. 85-5990, 1986 U.S. App. LEXIS 30813, 1986 WL 17769, at *2 (6th Cir. Sept. 17, 1986); Miller v. Gosline (In re Sunningdale Country Club), 351 F.2d 139, 143 (6th Cir. 1965).

We have adopted one primary and one secondary definition of what it means to be a "person aggrieved." Most often, we have held **[*11]** that a "person aggrieved" is someone who has "been 'directly and adversely affected pecuniarily by the [bankruptcy court] order.'" In re Brown, 851 F.3d at 623 (quoting Harker v. Troutman (In re Troutman Enters., Inc.), 286 F.3d 359, 364 (6th Cir. 2002)).[1] In a narrower set of circumstances, by contrast, we have found that "a *public* interest may also give a sufficient stake in the outcome of a bankruptcy case to confer appellate standing." Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.), 898 F.2d

---

[1] All circuits employ an identical definition. See, e.g., Neira Rivera v. Scotiabank De Puerto Rico (In re Neira), 14 F.4th 60, 66 (1st Cir. 2021); Berry v. Graphic Packaging Int'l (In re Johns-Manville Corp.), No. 20-3693-BK, 2022 U.S. App. LEXIS 27157, 2022 WL 4487889, at *2 (2d Cir. Sept. 28, 2022); In re Revstone Indus. LLC, 690 F. App'x 88, 89 (3d Cir. 2017); Mort Ranta v. Gorman, 721 F.3d 241, 248 n.10 (4th Cir. 2013); Furlough v. Cage (In re Technicool Sys., Inc.), 896 F.3d 382, 385 (5th Cir. 2018); In re Holly Marine Towing, Inc., 669 F.3d 796, 800 (7th Cir. 2012); O & S Trucking, Inc. v. Mercedes Benz Fin. Servs. USA (In re O & S Trucking, Inc.), 811 F.3d 1020, 1023 (8th Cir. 2016); Harkey v. Grobstein (In re Point Ctr. Fin., Inc.), 890 F.3d 1188, 1191 (9th Cir. 2018); Bear Creek Trail, LLC v. BOKF, N.A. (In re Bear Creek Trail, LLC), 35 F.4th 1277, 1281 n.5 (10th Cir. 2022); Atkinson v. Ernie Haire Ford, Inc. (In re Ernie Haire Ford, Inc.), 764 F.3d 1321, 1325 (11th Cir. 2014); Hope 7 Monroe St. Ltd. P'ship v. Riaso, LLC (In re Hope 7 Monroe St. Ltd. P'ship), 743 F.3d 867, 871, 408 U.S. App. D.C. 347 (D.C. Cir. 2014).

498, 499 (6th Cir. 1990) (citing SEC v. U.S. Realty & Improvement Co., 310 U.S. 434, 460, 60 S. Ct. 1044, 84 L. Ed. 1293 (1940)); *see also* Adams v. Zarnel (In re Zarnel), 619 F.3d 156, 161-62 (2d Cir. 2010) (discussing the public-interest application of the person-aggrieved standard at greater length).

The majority and I agree that these decisions foreclose the lenders' appeal in this case. Under either formulation of the standard, the lenders are not a "person aggrieved" who may appeal the bankruptcy court's abandonment order. The lenders do not identify any direct pecuniary harm that they suffered due to the bankruptcy court's order, and they plainly do not seek to represent the public interest. Instead, the lenders argue that the abandonment order harms them by requiring them to defend themselves against the Schuberts' state-court litigation. *See* Appellant Reply Br. at 24-25. Our decisions, in line with those of other federal courts of appeals and bankruptcy courts, have consistently held that such a litigation-related harm does **[*12]** not suffice to make one a "person aggrieved." *See* In re LTV Steel Co., 560 F.3d at 453; Stark v. Moran (In re Moran), 566 F.3d 676, 681 (6th Cir. 2009); Consol Energy, Inc. v. Murray Energy Holdings Co. (In re Murray Energy Holdings Co.), 624 B.R. 606, 613-14 (B.A.P. 6th Cir. 2021); Opportunity Fin., LLC v. Kelley, 822 F.3d 451, 458-60 (8th Cir. 2016). Indeed, we remarked not long ago that "we are aware of no court that has held that the burden of defending a lawsuit, however onerous or unpleasant, is the sort of direct and immediate harm that makes a party 'aggrieved' so as to confer standing in a bankruptcy appeal." In re LTV Steel Co., 560 F.3d at 453.

II.

The lenders question whether our person-aggrieved precedent can be reconciled with *Lexmark*, but they stop short of asking us to overrule those prior decisions. *See* Lenders Reply Br. at 23-24 & n.6. I believe that the person-aggrieved standard is consistent with *Lexmark* and thus that we lack a basis to overrule our precedent applying the standard.

A.

*Lexmark* was a case about whether one manufacturer could sue another for false advertising under the Lanham Act. 572 U.S. at 120-25. The parties characterized the issue presented as one of "prudential standing," but the Supreme Court found that label "misleading." Id. at 125. Observing that courts lack power to "limit a cause of action that Congress has created merely because 'prudence' dictates," the Court explained that the relevant question was not whether the manufacturer's lawsuit was barred by a judge-made prudential rule of standing. Id. at 128. Instead, **[*13]** the Court recharacterized the issue as whether the manufacturer fell "within the class of plaintiffs whom Congress has authorized to sue" under

the Lanham Act. *Id.* To resolve that issue, the Court turned to "traditional principles of statutory interpretation[.]" *Id.*

Among the principles that *Lexmark* considered was the zone-of-interests test, which dictates that courts "presume that a statutory cause of action extends only to plaintiffs whose interests 'fall within the zone of interests protected by the law invoked.'" *Id. at 129* (quoting *Allen v. Wright, 468 U.S. 737, 751, 104 S. Ct. 3315, 82 L. Ed. 2d 556 (1984)*). Although the zone-of-interests test "applies to all statutorily created causes of action," *id.*, it is not difficult to satisfy. The Court "[has] often 'conspicuously included the word "arguably" in the test to indicate that the benefit of any doubt goes to the plaintiff[.]'" *Id. at 130* (quoting *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak, 567 U.S. 209, 225, 132 S. Ct. 2199, 183 L. Ed. 2d 211 (2012)*). "[T]he test 'forecloses suit only when a plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that' Congress authorized that plaintiff to sue." *Id.* (quoting *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians, 567 U.S. at 225* (internal quotation marks omitted)).

Applying the zone-of-interests test proved straightforward in *Lexmark*. The Court observed that "[i]dentifying **[*14]** the interests protected by the Lanham Act . . . requires no guesswork, since the Act includes an 'unusual, and extraordinarily helpful,' detailed statement of the statute's purposes." *Id. at 131* (quoting *H.B. Halicki Prods. v. United Artists Commc'ns, Inc., 812 F.2d 1213, 1214 (9th Cir. 1987)*). That statement explains that the purposes of the Lanham Act are, among other things, to make actionable "the deceptive and misleading use of marks in . . . commerce; . . . to protect persons engaged in such commerce against unfair competition; [and] to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks[.]" *Id.* Based on the statute's focus on commercial interests, the Court held that "to come within the zone of interests in a suit for false advertising under *§ 1125(a)* [of the Lanham Act], a plaintiff must allege an injury to a commercial interest in reputation or sales." *Id. at 131-32*. "A consumer who is hoodwinked into purchasing a disappointing product may well have an injury-in-fact cognizable under Article III," the Court explained, "but he cannot invoke the protection of the Lanham Act[.]" *Id. at 132*.

*Lexmark* provides the framework that must guide our evaluation of the person-aggrieved standard. *Lexmark* "expresse[s] disfavor for prudential doctrines that abdicate jurisdiction and **[*15]** . . . emphasize[s] the duty federal courts have to exercise jurisdiction." *Ochadleus v. City of Detroit (In re City of Detroit), 838 F.3d 792, 800 (6th Cir. 2016)*. But the decision does more than remind courts of their

obligation to hear cases within their jurisdiction. *Lexmark* also identifies the zone-of-interests test as the doctrinal test that the courts must use to sort between doctrines that appropriately reflect Congress's judgment about who is entitled to sue and those that inappropriately abdicate jurisdiction. Consistent with the zone-of-interests test, the question is whether the person-aggrieved standard reflects Congress's judgment about the "class of plaintiffs" entitled to sue under the Bankruptcy Code. *Lexmark, 572 U.S. at 128*.

**B**.

At the outset, I do not dispute that language used in some of our decisions suggests that the person-aggrieved standard embodies judicial, rather than congressional, interests. We have said in an unpublished opinion that the standard "should be applied as a matter of judge-made law." *In re L.T. Ruth Coal Co., 1986 U.S. App. LEXIS 30813, 1986 WL 17769, at *2*. Then-Judge Gorsuch offered one popular explanation for the courts' decision to maintain the standard despite its omission from the modern Bankruptcy Code, explaining that "without such a [person-aggrieved] requirement, bankruptcy litigation could easily 'become mired in **[*16]** endless appeals brought by a myriad of parties who are indirectly affected by every bankruptcy court order.'" *United States v. Krause (In re Krause), 637 F.3d 1160, 1168 (10th Cir. 2011)* (quoting *Holmes v. Silver Wings Aviation, Inc., 881 F.2d 939, 940 (10th Cir. 1989)*); *see also Greater Se. Cmty. Hosp. Found., Inc. v. Potter, 586 F.3d 1, 5-6, 388 U.S. App. D.C. 276 (D.C. Cir. 2009)* (echoing the same rationale). If these decisions are correct that the person-aggrieved standard serves only judicial interests, I agree that *Lexmark* would require us to discard the standard and chart a different course.

But not every decision has adopted (or limited itself to) the same prudential rationale for the person-aggrieved standard. Our decisions have often suggested instead that the person-aggrieved standard serves to ensure that only those whose interests are directly implicated by bankruptcy proceedings or protected by the Bankruptcy Code are able to challenge those proceedings on appeal. *See, e.g., In re L.T. Ruth Coal Co., 1986 U.S. App. LEXIS 30813, 1986 WL 17769, at *2* (explaining that the person-aggrieved standard authorizes bankruptcy appeals by "those who have immediate interests in the bankrupt estate as such and does not include those who would be indirectly affected by the [bankruptcy court] order" (quoting *In re Sunningdale Country Club, 351 F.2d at 143*)); *see also In re Murray Energy Holdings Co., 624 B.R. at 614* (observing that "[t]o be a 'person aggrieved' by a bankruptcy court's order because it impedes the person's interests in other litigation, those interests must be interests the Bankruptcy **[*17]** Code intends to protect"). These decisions suggest that the person-aggrieved standard does not merely allow courts to

control their dockets, but instead directs the courts to perform a zone-of-interests analysis in line with *Lexmark*.

Our decision in *In re Moran, 566 F.3d 676*, provides one example of how the person-aggrieved standard can embody a zone-of-interests analysis. *Moran* addressed a familiar issue: whether an appellant could appeal a bankruptcy court's abandonment order. *Id. at 678-79*. Critical to our holding that the appellant was not a "person aggrieved" who could maintain their appeal was the fact that the appellant's "interests are either not directly harmed by the bankruptcy court's order or are not interests that bankruptcy law—in particular the law governing abandonment—protects." *Id. at 681*. *Moran* further stated that the appellant's interest "in avoiding a state-court lawsuit, or even in affecting who has the right to bring that suit, is not the sort of interest that bankruptcy law in general is designed to protect." *Id.* Far from imposing a free-floating prudential rule meant to protect our docket, therefore, *Moran* was focused on identifying whether the appellant's claim fell within zone of interests that Congress [*18] sought to protect in the Bankruptcy Code in general and the abandonment provision in particular. That analysis, though framed as an application of the person-aggrieved standard, is entirely consistent with the zone-of-interests test.

Three recent out-of-circuit appellate decisions lend further support to the conclusion that the person-aggrieved standard embodies a zone-of-interests analysis. See *U.S. Bank, Nat'l Ass'n v. SFR Invs. Pool 1, LLC (In re Petrone), 754 F. App'x 590 (9th Cir. 2019)*; *Lee v. McCardle (In re Peeples), 880 F.3d 1207 (10th Cir. 2018)*; *Atkinson v. Ernie Haire Ford, Inc. (In re Ernie Haire Ford, Inc.), 764 F.3d 1321, 1325 (11th Cir. 2014)*. In each case, the circuit court characterized the person-aggrieved standard as requiring the appellant to show that they fell within the zone of interests protected by the relevant provision of the Bankruptcy Code. *In re Petrone, 754 F. App'x at 591*; *In re Peeples, 880 F.3d at 1213-16*; *In re Ernie Haire Ford, Inc., 764 F.3d at 1324-27*. None of the decisions suggest that the person-aggrieved standard is in conflict with *Lexmark*.

*In re Moran* and these out-of-circuit decisions demonstrate that the person-aggrieved standard, when properly applied, amounts to a zone-of-interests test that asks whether the bankruptcy appellant's "interests 'fall within the zone of interests protected by the law invoked.'"[2] *Lexmark, 572 U.S. at 129* (quoting *Allen, 468 U.S. at 751*). Of course, that is not to say that the standard cannot be misapplied or run

---

[2] The majority urges any future panel considering the viability of the person-aggrieved standard to address the omission of the phrase "any party aggrieved" from the Bankruptcy Code. *See* Maj. Op. at 7 n.2. I note only that *Lexmark* did not limit its analysis to whether the Lanham Act contained a provision restricting who could bring suit under the Act. *572 U.S. at 129-32*. The Court instead looked more broadly to the Act as a whole to determine whether the manufacturer's interests fell "within the zone of interests protected by the law invoked." *Id. at 129*.

afoul of *Lexmark*. It may be, for instance, that we have overlooked ways in which a person may not meet the pecuniary **[*19]** or public-interest formulations of the person-aggrieved standard and yet still seek to advance interests that are protected by the particular Bankruptcy Code provision at issue. But previous misapplications of the person-aggrieved standard do not place the standard itself in conflict with *Lexmark* or provide us with a basis to overturn our precedent. Rather, those decisions caution us to be careful to engage with each provision of the Bankruptcy Code on its own terms and to limit appeals only when the appellants' interests do not arguably fall within the statute's zone of interests. With that understanding, I turn to the Bankruptcy Code provision at issue here.

**III**.

Consistent with *Lexmark* and the cases discussed above, I would apply the person-aggrieved standard in this case and determine whether the interests that the lenders seek to vindicate through their appeal "fall within the zone of interests protected by" the provision of the Bankruptcy Code under which the lenders bring their challenge. *Lexmark, 572 U.S. at 129*.

The lenders invoke § 554(b) of the Bankruptcy Code, which concerns abandonment of property of the bankruptcy estate. *See* 11 U.S.C. § 554(b). Section 554(b) provides:

On request of a party in interest and after notice and a hearing, the court may **[*20]** order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

*Id.*

We have previously explained the "policy" reflected in § 554(b). *See Morgan v. K.C. Mach. & Tool Co. (In re K.C. Mach. & Tool Co.), 816 F.2d 238, 245 (6th Cir. 1987)*. Once a bankruptcy estate is created, "[t]he trustee's purpose is to liquidate the estate for the benefit of unsecured creditors." *Id. at 245-46*. The Bankruptcy Code facilitates the trustee's execution of that purpose by allowing her to retain property that benefits the estate and abandon property that does not. *Id. at 246*. But in some instances, a conflict of interest may arise. "In enacting § 554, Congress was aware of the claim that formerly some trustees took burdensome or valueless property into the estate and sold it in order to increase their commissions." *Id.* Section 554(b) addresses that problem by empowering courts to order, upon request of a party in interest and after making certain findings as to the property's value, the trustee to abandon the property. *Id.*

Section 554(b)'s purpose and policy require us to dismiss the lenders' appeal. As discussed, the lenders' sole interest in this case is "staving off the threat of litigation[.]" Maj. Op. at 6. The lenders do not argue that their appeal has the

potential to benefit **[*21]** the estate or that their interests align with the interests of the estate. Nor do the lenders claim an interest in the property at issue; this is not a case in which a party seeks to free unused and idle property from the estate. Cf. *Jahn v. Burke (In re Burke), 863 F.3d 521, 526 (6th Cir. 2017)*. Accordingly, I would hold that the lenders' interests do not fall within the zone of interests Congress sought to protect in § 554(b) and would decline to reach the merits of their challenge to the abandonment order. Because the majority reaches the same result on other grounds, I concur in the judgment.

---

End of Document