# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
July 19, 2023
Lyle W. Cayce
Clerk

No. 22-10575

---

In the Matter of Highland Capital Management, L.P.

*Debtor*,

NexPoint Advisors, L.P., Appellant/Creditor/Party in Interest 11 U.S.C. 1109(b),

*Appellant*,

*versus*

Pachulski Stang Ziehl & Jones, L.L.P., Appellee/Retained Professional; Wilmer Cutler Pickering Hale and Dorr, L.L.P.; FTI Consulting, Incorporated; Teneo Capital, L.L.C.; Sidley Austin, L.L.P.,

*Appellees*,

---

NexPoint Advisors, L.P.,

*Appellant*,

*versus*

Wilmer Cutler Pickering Hale and Dorr, L.L.P.,

*Appellee*,

---

NexPoint Advisors, L.P.,

*Appellant,*

versus

Teneo Capital, L.L.C.,

*Appellee,*

_____

NexPoint Advisors, L.P.,

*Appellant,*

versus

Sidley Austin, L.L.P.,

*Appellee,*

_____

NexPoint Advisors, L.P.,

*Appellant,*

versus

FTI Consulting, Incorporated,

*Appellee.*

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC Nos. 3:21-CV-3086, 3:21-CV-3088,
3:21-CV-3094, 3:21-CV-3096,
3:21-CV-3104

_____

No. 22-10575

Before HIGGINBOTHAM, SOUTHWICK, and WILLETT, *Circuit Judges*.
PATRICK E. HIGGINBOTHAM, *Circuit Judge*:

The bankruptcy court, administering a complex bankruptcy, dismissed NexPoint Advisors, LP's objection to professional fees paid to myriad organizations. NexPoint appealed to the district court, sitting as an appellate court. The district court dismissed for lack of standing to appeal. NexPoint appeals. We AFFIRM.

I.

Highland Capital Management filed for bankruptcy under 11 U.S.C. § 301 in October 2019 in Delaware. The following month, the Delaware bankruptcy court issued an *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals*, providing a set of procedures for professionals involved in the bankruptcy to seek payment, and for other related parties to challenge their applications. The order reads in relevant part:

> Neither (i) the payment of or the failure to pay, in whole or in part, interim compensation and/or reimbursement of or the failure to reimburse, in whole or in part, expenses under the Interim Compensation Procedures nor (ii) the filing or failure to file an Objection will bind any party in interest or the Court with respect to the final allowance of applications for payment of compensation and reimbursement of expenses of Professionals. All fees and expenses paid to Professionals under the Interim Compensation Procedures are subject to disgorgement until final allowance by the Court.

On the same day, the Delaware bankruptcy court transferred the bankruptcy to the bankruptcy court of the Northern District of Texas.

By February 2021, the Texas bankruptcy court had approved the Debtor's reorganization plan and granted related relief, providing in part that

3

final professional fee claims were to be filed within 60 days. Five organizations timely did so: (i) Pachulski Stang Ziehl & Jones, LLP ("PSZJ"[1]), (ii) Wilmer Cutler Pickering Hale & Dorr ("WilmerHale"[2] and, together with PSZJ, the "Debtor's Professionals"), (iii) Sidley Austin, LLP ("Sidley"[3]), (iv) FTI Consulting, Inc. ("FTI"[4]), and (v) Teneo Capital, LLC ("Teneo"[5] and, with FTI and Sidley, the "Committee Professionals" and, with the Debtor's Professionals, the "Appellees").

NexPoint timely objected, urging "failure to properly serve the Final Applications and provide notice of the applicable objection deadline(s) thereto" as established by the bankruptcy court's order. NexPoint also requested leave to supplement the record if an extra inspection found additional grounds for opposition. The Debtor's Professionals and the Committee's Professionals filed their respective replies.

At the Final Fee Hearing, the bankruptcy court denied NexPoint's requests for discovery and review. The bankruptcy court first took issue with the timing of NexPoint's objections and request. Conceding that "no one is bound by an interim fee approval order," the court expressed its concerns that NexPoint objected "at the end of the case," observing that "now we need much more time because there's so much to review [requiring] a fee examiner." Turning to the merit of the objection, the judge observed:

> The fees are high, but they're not eye-popping. They're not *Purdue Pharma*. They're not *Boy Scouts*. They're not *PG&E*.

---

[1] Debtor's general bankruptcy counsel.

[2] Debtor's regulatory and compliance counsel.

[3] Counsel to the Official Committee of Unsecured Creditors in Debtor's bankruptcy (the "Committee").

[4] The Committee's financial advisor.

[5] The Committee's litigation advisor.

> You know, for a case where there were well over a billion dollars of claims asserted, if they in the aggregate are approaching $50 million, I'm not terribly surprised, given what I've seen.

The bankruptcy judge orally approved Appellees' fee applications at the hearing and entered the five final orders approving the fee applications days later. NexPoint timely appealed to the district court.

After consolidating the appeals, the district court dismissed NexPoint's challenge for lack of appellate standing in bankruptcy appeals. First, the district court rejected NexPoint's challenge to this Court's "aggrieved person" standard and concluded that NexPoint lacked standing by that standard despite its administrative fee claims and status as a defendant in an adversary proceeding. The district court then rejected NexPoint's alternative argument that, the "person aggrieved" standard aside, it had standing to appeal the orders under Sections 330 and 1109 of the bankruptcy code and dismissed the appeal for lack of jurisdiction. This appeal followed.

## II.

NexPoint forwards several arguments in support of its standing to challenge the district court's orders: (1) that its status as a defendant in a related adversary proceeding confers standing under the "person aggrieved" test; (2) that prudential standing considerations such as the "person aggrieved" standard did not survive *Lexmark Int'l, Inc. v. Static Control Components, Inc.*,[6] and that it meets traditional Article III standing requirements; (3) that by a prior ruling of this Court, the "person aggrieved" standard is more capacious than its application here and confers NexPoint

---

[6] 572 U.S. 118 (2014).

No. 22-10575

standing to seek review of the challenged orders; and (4) that related bankruptcy provisions confer standing.[7] None persuade.

### A.

"In ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."[8] "Standing is a question of law that we review de novo."[9]

"Bankruptcy courts are not authorized by Article III of the Constitution, and as such are not presumptively bound by traditional rules of judicial standing."[10] Rather, standing was governed by statute, which read: "A person aggrieved by an order of a referee may . . . file with the referee a petition for review . . . ."[11] Congress expressly removed this provision when it enacted the Bankruptcy Code in 1978.[12] Despite its removal, we have affirmed that the "person aggrieved" test continues to govern standing in bankruptcy proceedings.[13]

---

[7] NexPoint presents its arguments in a different order and using different organizational headings. However, we disentangle these arguments to evaluate and adjudicate them based on the separate legal principles and considerations each engenders.

[8] *In re Coho Energy Inc.*, 395 F.3d 198, 202 (5th Cir. 2004) (quoting *Rohm & Hass Tex., Inc. v. Ortiz Bros. Insulation, Inc.*, 32 F.3d 205, 207 (5th Cir. 1994)).

[9] *Matter of Technicool Sys., Inc. (In re Technicool)*, 896 F.3d 382, 385 (5th Cir. 2018) (citing *Fortune Nat. Res. Corp. v. U.S. Dep't of Interior*, 806 F.3d 363, 366 (5th Cir. 2015)).

[10] *In re Coho*, 395 F.3d at 202 (citing *Rohm*, 32 F.3d at 210 n.18).

[11] *Id.* (quoting 11 U.S.C. § 67(c) (1976) (repealed 1978)).

[12] *See id.*

[13] *See id.* (citing *Rohm*, 32 F.3d at 210 n.18).

The test—which we have repeatedly described as "'more exacting' than the test for Article III standing"[14]—holds that an appellant must show it was "*directly and adversely affected pecuniarily* by the order of the bankruptcy court."[15] "In essence, bankruptcy standing requires 'a higher causal nexus between act and injury'" than traditional standing,[16] one that we have repeatedly deployed[17] and that best deals with the unique posture of bankruptcy actions:

> Bankruptcy cases often involve numerous parties with conflicting and overlapping interests. Allowing each and every party to appeal each and every order would clog up the system and bog down the courts. Given the specter of such sclerotic litigation, standing to appeal a bankruptcy court order is, of necessity, *quite limited*.[18]

NexPoint pointed to two different sources of "aggrievement": (1) its administrative claim, and (2) its role as a defendant in a pending adversary

---

[14] *In re Technicool*, 896 F.3d at 385 (quoting *Matter of Delta Produce, L.P.*, 845 F.3d 609, 619 (5th Cir. 2016)).

[15] *Id.* (emphasis added) (quoting *Fortune Nat. Res.*, 806 F.3d at 366); *see also Dean v. Seidel (In re Dean)*, 18 F.4th 842, 844 (5th Cir. 2021) (observing that bankruptcy standing "is an even more exacting standard than traditional constitutional standing" (quoting *Fortune Nat. Res.*, 806 F.3d at 366)); *In re Coho*, 395 F.3d at 203 (using identical "more exacting" language).

[16] *In re Technicool*, 896 F.3d at 385–86 (quoting *Fortune Nat. Res.*, 806 F.3d at 366).

[17] *See, e.g.*, *In re Coho*, 395 F.3d at 202–04 (using the "person aggrieved" standard); *Di Ferrante v. Young (In re Young)*, 416 F. App'x 392, 399 (5th Cir. 2011) (unpublished) (per curiam) (using this "high bar for standing" vis-à-vis Di Ferrante); *Schum v. Zwirn Special Opportunities Fund LP (In re Watch Ltd.)*, 257 F. App'x 748, 749–50 (5th Cir. 2007) (unpublished) (per curiam) (evaluating an appellant's standing under the same test).

[18] *In re Technicool*, 896 F.3d at 385 (emphasis added).

proceeding.[19] Regarding the administrative claim, the district court reasoned that because it was "extremely remote" that NexPoint's claim would not be paid, NexPoint lacks standing because its theory of harm is too remote or speculative. And regarding the adversary proceedings, the district court concluded that because this pertains to a separate proceeding, "[a]t most, [NexPoint] *could* be *indirectly* impacted by the Fee Application Orders, but only if [NexPoint] was to be found liable in the Adversary Proceeding," meaning the harm was again too "speculative" and "not sufficient to confer standing."[20] The able district court's assessments are sound.

The bankruptcy court disallowed NexPoint's administrative expense claim, denying it recovery from the Debtor's bankruptcy estate. This alone takes the legs from NexPoint's argument, for if it is not entitled to administrative expenses the payout of professional expenses to others cannot impact its finances. Accepting this reality, it shifts gears, observing that "[a]lthough [the district court's] holding[] [is] incorrect, NexPoint's arguments here will focus principally on the Adversary Proceeding."

Turning then to the adversary proceeding, NexPoint fares no better. As there is at present no judgment or order or process to require NexPoint to pay any fees as a result of the adversary proceeding, "the speculative prospect of harm is far from a direct, adverse, pecuniary hit,"[21] particularly so when such a harm would be felt indirectly via a separate proceeding.[22]

---

[19] Notably, NexPoint also relied upon their prepetition claims, but, as the district court observed, "all of [them] have been either expunged or withdrawn," meaning arguments relying thereupon are effectively moot.

[20] Emphases added.

[21] *In re Technicool*, 896 F.3d at 386.

[22] *See id.* at 384 ("Furlough's indirect interest in the order fails to meet the strict requirements for bankruptcy standing.").

Indeed, as Appellees' counsel observed at oral argument, no less than seven different "ifs" must come to pass for the bankruptcy's order in this action to impact NexPoint.[23] And the adversary proceeding upon which those "ifs" rest has since been stayed, further diminishing the likelihood NexPoint will be harmed by the bankruptcy court orders.[24] In sum, NexPoint fails to establish that the adversary proceeding "directly, adversely, and financially impact[s]" it beyond anything other than mere speculation.[25]

**B.**

NexPoint then pivots, urging that the "person aggrieved" standard did not survive the Supreme Court's *Lexmark* decision. We disagree. *Lexmark* addressed standing in false advertising claims under the Lanham Act.[26] The Supreme Court reminded that courts may not "limit a cause of action that Congress has created merely because 'prudence' dictates."[27] NexPoint runs with this language, arguing that it nullifies the "person aggrieved" test for prudential standing in bankruptcy actions.

---

[23] As represented at oral argument, these "ifs" include: (1) certain related parties filing certain claims against parties related to NexPoint; (2) a different court proceeding to adjudicate those claims, (3) that proceeding resulting in a judgment against the related entities; (4) a separate proceeding to determine that NexPoint is an alter-ego of those entities against whom the judgment was entered; (5) the court then ruling to include fees from this bankruptcy case in that judgment; (6) the same court concluding that NexPoint is foreclosed from arguing the reasonableness of these fees; and (7) additional courts unanimously upholding these decisions.

[24] *See* Notice of Supplemental Authority at 1, *NexPoint Advisors v. Pachulski Stang et al.*, No. 22-10575 (5th Cir. Apr. 19, 2023) (Dkt. No. 84).

[25] *In re Dean*, 18 F.4th at 844 (quoting *In re Technicool*, 896 F.3d at 384).

[26] *See generally* 572 U.S. 118.

[27] *Id.* at 128.

But it is settled that "[f]or a Supreme Court decision to override a Fifth Circuit case, the decision must *unequivocally* overrule prior precedent; mere illumination of a case is insufficient,"[28] that "an intervening change in the law [cannot be] a mere 'hint' of how the [Supreme] Court might rule in the future."[29] Yet *Lexmark* focuses solely on standing under the Lanham Act,[30] and the year after *Lexmark* was decided, we expressly held in *Superior MRI Services Inc. v. Alliance Healthcare Services, Inc.* that *Lexmark* "deals *only* with the zone-of-interests test and not with the requirement that a party assert its own rights."[31] In other words, this Court found *Lexmark* to reach only circumstances analogous to those at issue in *Lexmark*, rather than broadly modifying—or undermining—*all* prudential standing concerns, such as the one animating the "person aggrieved" standard in bankruptcy appeals. And post-*Lexmark*, this Court has repeatedly reaffirmed the "person aggrieved" standard in analogous situations, implicitly affirming its life post-*Lexmark*.[32]

---

[28] *Gahagan v. U.S. Citizenship & Imm. Servs.*, 911 F.3d 298, 302 (5th Cir. 2018) (emphasis added) (quoting *United States v. Petras*, 879 F.3d 155, 164 (5th Cir. 2018)); *see also Carter v. S. Cent. Bell*, 912 F.2d 832, 840 (5th Cir. 1990) (requiring adherence to a prior panel's interpretation "unless that interpretation is irreconcilable with" a later Supreme Court decision).

[29] *Hines v. Quillivan*, 982 F.3d 266, 271 (5th Cir. 2020) (second alteration in original) (quoting *United States v. Alcantar*, 733 F.3d 143, 146 (5th Cir. 2013)); *Petras*, 879 F.3d at 164 (holding that "mere illumination of a case is insufficient" to abrogate our circuit precedent).

[30] *See generally* 572 U.S. 118.

[31] 778 F.3d 502, 506 (5th Cir. 2015) (emphasis added).

[32] *See Azby Fund v. Wadsworth Ests., L.L.C.*, No. 22-30092, 2022 WL 17582273, at *2 (5th Cir. Dec. 12, 2022) (unpublished) (per curiam) ("Typically, '[t]o determine whether a party has standing to appeal a bankruptcy court order, this court uses the "person aggrieved" test.'" (quoting *In re Dean*, 18 F.4th at 844) (alteration in original)); *In re Mar. Commun./Land Mobile L.L.C.*, 745 F. App'x. 561, 562 (5th Cir. 2018) (unpublished) (per curiam) (citing and deploying the "person aggrieved" test); *Kingdom*

We are yet to address directly the "person aggrieved" standing in light of *Lexmark*. *Superior MRI* concerned a contractual claim following a Chapter 7 bankruptcy rather than a district court's appellate review of a bankruptcy court order, and other published precedent has not explicitly addressed this argument.[33] As *Superior MRI*'s reasoning applies with equal force and certitude here, we do so now: *Lexmark* does not expressly reach prudential concerns in bankruptcy appeals and brought no change relevant here.[34]

## C.

NexPoint also argues that the current law of "person aggrieved" is unsound, pointing to this Court's 1995 decision in *Cajun Electric Power Cooperative v. Central Louisiana Electric Cooperative*.[35] There, we held: "To have standing to appeal a bankruptcy order, a party must show that it was

---

*Fresh Produce, Inc. v. Stokes Law Office, L.L.P. (In re Delta Produce, L.P.)*, 845 F.3d 609, 619 (5th Cir. 2016) (same); *Fortune Natural Res.*, 806 F.3d at 366 (same).

[33] *See Matter of Highland Cap. Mgmt., L.P.*, 57 F.4th 494, 501 (5th Cir. 2023) (affirming that "[t]his circuit uses the 'person aggrieved' standard to determine whether a party has standing to appeal a bankruptcy court order" without discussing *Lexmark* (citation omitted)); *In re Dean*, 18 F.4th at 844; *In re Technicool*, 896 F.3d at 385–86; *Lejeune v. JFK Capital Holdings, L.L.C. (In re JFK Capital Holdings, L.L.C.)*, 880 F.3d 747, 751 (5th Cir. 2018) (stating that "[w]e use the 'person aggrieved' test to determine whether a party has standing to appeal an order of the bankruptcy court" without discussing *Lexmark* (citation omitted)).

[34] As well, among a series of Rule 28(j) letters, Appellant points us to, *inter alia*, a recent Ninth Circuit case that appears to deploy Article III standing as the threshold jurisdictional hurdle before resorting to the "person aggrieved" standard. Letter, No. 22-10575 (5th Cir. June 20, 2023) (Dkt. No. 92); *see Matter of E. Coast Foods, Inc.*, 66 F.4th 1214, 1218 (9th Cir. 2023) (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014)). It is not offended by the more exacting "person aggrieved" metric attending the disposition of bankruptcy claims like the one at issue.

[35] *Matter of Cajun Elec. Power Co-op., Inc.*, 69 F.3d 746 (5th Cir. 1995) ("*Cajun Electric*"), *opinion withdrawn in part on reh'g*, 74 F.3d 599 (5th Cir. 1996).

No. 22-10575

'directly and adversely affected pecuniarily by' the order *or* that the order diminished its property, increased its burdens, or impaired its rights."[36] NexPoint focuses on the disjunctive "or" and the latter clause—which, by its text, allows for appeals absent monetary harm—arguing that later iterations inappropriately distorted the standard for bankruptcy standing by requiring such a financial detriment. Appellees counter: (1) NexPoint failed to raise this argument to the district court, forfeiting it; and (2) adopting *arguendo* the *Cajun Electric* standard, NexPoint still fails to meet this threshold.

"An argument not raised before the district court cannot be asserted for the first time on appeal."[37] This, of course, remains true in bankruptcy appeals, where this Court "[a]ct[s] as a 'second review court.'"[38] NexPoint replies that it lacked an opportunity to raise its *Cajun Electric* argument below. True, in the Motion to Dismiss stage, Appellees focused on NexPoint's general unsecured and administrative expenses to argue that NexPoint lacked standing. But in response NexPoint *relied* on the adversary proceeding to establish that it had standing and made the same argument regarding *Lexmark*'s effect on the "person aggrieved" as well as its argument

---

[36] *Id.* at 749 (emphasis added).

[37] *HSBC Bank USA, N.A. v. Crum*, 907 F.3d 199, 207 (5th Cir. 2018) (quoting *XL Specialty Ins. Co. v. Kiewit Offshore Servs., Ltd.*, 513 F.3d 146, 153 (5th Cir. 2008)).

[38] *Matter of Lopez*, 897 F.3d 663, 668 (5th Cir. 2018) (quoting *Official Comm. of Unsecured Creditors v. Moeller (In re Age Ref., Inc.)*, 801 F.3d 530, 538 (5th Cir. 2015)); *see also Ries v. Paige (In re Paige)*, 610 F.3d 865, 871 (5th Cir. 2010) ("As we generally do not consider arguments raised for the first time on appeal, [the appellant's] argument is waived."); *Crosby v. OrthAlliance New Image (In re OCA, Inc.)*, 552 F.3d 413, 424 (5th Cir. 2008) ("A thorough review of the record confirms that [the appellant] did *not* raise the issue of assignment in the bankruptcy court. At oral argument, [the appellant] also admitted that it had not raised the assignment issue below. Since this issue was not properly presented to the bankruptcy court, it cannot be raised now for the first time on appeal.").

No. 22-10575

regarding the "zone of interests" delineated in 11 U.S.C. §§ 330 and 1109(b), to which we will turn. By failing to raise the *Cajun Electric* argument simultaneously, NexPoint waived its right to do so here.

## D.

Finally, NexPoint argues that Bankruptcy Code §§ 330 & 1109 confer appellate standing.[39] We disagree. Section 1109(b) provides that "[a] party in interest, including . . . a creditor . . . may raise and may appear and be heard on any issue in a case under this chapter."[40] In lay terms, § 1109(b) speaks to one's standing to appear and be heard before the bankruptcy court, a concept distinct from standing to appeal the merits of a decision. As other courts have recognized, "[b]ecause Section 1109(b) 'expands the right to be heard [in a bankruptcy proceeding] to a wider class than those who qualify under the "person aggrieved" standard,' courts considering the issue have concluded that 'merely being a party in interest is insufficient to confer appellate

---

[39] Because the argument relies upon the identical "party in interest" language from both statutory provisions, *see* 11 U.S.C. §§ 330, 1109, we will refer only to § 1109(b).

[40] 11 U.S.C. § 1109(b).

No. 22-10575

standing.'"[41] We agree, as does the "leading treatise on bankruptcy law, Collier"[42]:

> Although section 1109 speaks broadly of the right of a party in interest to raise and to appear and be heard on any issue in a chapter 11 case, the section is silent on the subject of a party's standing to take an appeal from an adverse decision, other than to expressly prohibit the Securities and Exchange Commission from taking an appeal. In general, in order for a person to be a proper party to take an appeal, one must be a "person aggrieved" by the outcome of a particular proceeding. Consistent with the basic purpose of section 1109(b), a party qualifies as a "person aggrieved" if the decision in question adversely affects the party's pecuniary interest.[43]

---

[41] *Advantage Healthplan, Inc. v. Potter*, 391 B.R. 521, 541 (D.D.C. 2008) (alteration in original) (citations omitted) (first quoting *In re American Ready Mix, Inc.*, 14 F.3d 1497, 1502 (10th Cir. 1994); and then quoting *In re Salant Corp.*, 176 B.R. 131, 134 (S.D.N.Y. 1994)), *aff'd sub nom. Greater Se. Cmty. Hosp. Found., Inc. v. Potter*, 586 F.3d 1 (D.C. Cir. 2009); *see also In re Combustion Eng'g, Inc.*, 391 F.3d 190, 217 (3d Cir. 2004), *as amended* (Feb. 23, 2005) ("[W]e apply a "persons aggrieved" standard, not a "party in interest" standard, to determine bankruptcy appellate standing."); *In re Betteroads Asphalt, LLC*, Nos. 17-BK-04156, 17-BK-04157, 2020 WL 7048697, at *9 (D.P.R. Nov. 30, 2020) ("Pursuant to § 1109(b) of the Bankruptcy Code, 'merely being a party in interest is insufficient to confer appellate standing.'" (quoting *Advantage Healthplan, Inc.*, 391 B.R. at 540)); *In re Prospector Offshore Drilling S.a R.L.*, No. 17-CV-11572, 2019 WL 1150563, at *6 (D. Del. Mar. 12, 2019) ("While [§ 1109] 'confers broad standing at the trial level,' 'courts do not extend that provision to appellate standing.'" (quoting *In re PWS Holding Corp.*, 228 F.3d 224, 249 (3d Cir. 2000)), *aff'd sub nom. In re Paragon Offshore plc*, No. 19-1627, 2022 WL 1055574 (3d Cir. Apr. 8, 2022); *In re Packard Square, LLC*, No. 17-CV-52483, 2018 WL 2184356, at *3 (E.D. Mich. May 11, 2018) (same); *In re Victory Markets, Inc.*, 195 B.R. 9, 15 (N.D.N.Y. 1996) ("Contrary to Appellant's interpretation, § 1109(b) does not confer appellate standing.").

[42] *Lamie v. U.S. Tr.*, 540 U.S. 526, 540 (2004).

[43] 7 COLLIER ON BANKRUPTCY, ¶ 1109.08 (16th ed. 2022) (footnotes omitted).

No. 22-10575

And, despite NexPoint's able effort, case law brings it no comfort. It points to *Collins v. Mnuchin*[44] in which we observed that *Lexmark* stands for the proposition that "[f]or very broad statutory rights like the APA, an injury in fact and inclusion in the zone of interests can add up to a right of action, even if prudential standing limits would have blocked it."[45] But as Appellees observe, *Collins* addressed shareholder claims against the Federal Housing Finance Agency under the Administrative Procedure Act, and is not a bankruptcy case, it "says nothing about Bankruptcy Code § 1109, the person aggrieved standard, or anything else even tangentially related to the issues in this appeal." *Collins*, when read in conjunction with the "party in interest" language from Bankruptcy Code §§ 330 and 1109, still fails to engage our longstanding precedent that appellate standing in bankruptcy actions is afforded only to a "person aggrieved."[46]

*****

We AFFIRM.

---

[44] 938 F.3d 553 (5th Cir. 2019), *reversed and vacated in part on other grounds*, *Collins v. Yellen*, 141 S. Ct. 1761 (2021).

[45] 938 F.3d at 575.

[46] *See supra* n.32–33.